David HODECKER and Connie Hodecker, Individually and on behalf of their minor children and on behalf of all other persons similarly situated, Plaintiffs,

v.

Barbara B. BLUM, Commissioner of the New York State Department of Social Services, Defendant.

No. 81–CV–108.

United States District Court, N. D. New York.

Nov. 6, 1981.

## MEMORANDUM–DECISION

MUNSON, Chief Judge.

The plaintiff Connie Hodecker is a disabled, "medically-needy" adult who is in receipt of medical assistance [Medicaid] benefits. With her non-disabled husband and minor children, Ms. Hodecker has instituted this civil rights action for declaratory and injunctive relief to challenge State Social Service Commissioner Blum's alleged practice of computing Medicaid for aged and adult blind or disabled recipients in a manner more restrictive than that method used to determine Medicaid for minor blind or disabled recipients. Jurisdiction lies under 28 U.S.C. § 1331.

Presently before the Court are motions by the plaintiff for class action certification and for summary judgment on Counts 2 and 6 of their complaint.[1] The defendant has cross-moved for summary judgment on Counts 2 and 6, and has moved for a stay pending appeal in the event that the plaintiffs prevail on their claims.

### I.

The following material facts are undisputed.

David and Connie Hodecker share a common household as husband and wife in Rochester, New York, with their two children, Kenneth, age 9, and Lisa, age 6. Only Mr. Hodecker is employed. Ms. Hodecker is disabled because she is bed-ridden from multiple sclerosis; she has no income other than her husband's earnings.

On September 29, 1980, the State Commissioner issued administrative directive 80 ADM–78, which sets forth a budgeting methodology for determining the amount of Medicaid for persons like Ms. Hodecker. New York converted to this plan on August 29, 1980. Under this methodology, Ms. Hodecker's Medicaid is budgeted by deducting from her husband's earned income his taxes, work expenses, and a $20.00 monthly earned income disregard, and by comparing

Greater Upstate Law Project, Rochester, N. Y., Baker & Clark, Syracuse, N. Y., for plaintiffs; Rene H. Reixach, Rochester, N. Y., Frank A. Clark, Syracuse, N. Y., of counsel.

Robert Abrams, Atty. Gen. of State of N. Y., Albany, N. Y., for defendant Blum; C. Michael Reger, David A. Dietrich, Asst. Attys. Gen., Albany, N. Y., of counsel.

1. The plaintiffs have also moved to amend Count 2 of their complaint. This motion has been unopposed.

the resulting net income to the medically needy income level for a family of four, as specified in N.Y. Social Services Law § 366(2)(a)(8). In this regard, only Mr. Hodecker, as the spouse of Ms. Hodecker, is financially responsible for his wife's care. *See N.Y. Social Services Law § 366(2)(b). According to the defendant's methodology, Mr. Hodecker has a "spend-down" liability of approximately $742.00, which he is expected to incur for his wife's medical care. Were Ms. Hodecker a disabled or blind minor, however, Mr. Hodecker's liability could be $276.00, because reference could be made not to the income levels set forth in the N.Y. Social Services Law § 366(2)(a)(8), but to a table of responsible relative support obligations set forth in 18 N.Y.C.R.R. § 360.7(d). Thus, the amount of money that Mr. Hodecker must contribute toward the medical care of his spouse exceeds the amount he would be required to contribute toward the medical care of a blind or disabled minor.*

It is the defendant's practice of budgeting minor Medicaid recipients differently than adult Medicaid recipients which the plaintiffs contest.

## II.

■ The plaintiffs seek to represent a class comprised of

[a]ll aged, and adult blind or disabled persons who are now or may in the future be recipients of medical assistance (Medicaid) in the State of New York who live with their spouses, and their non-disabled minor children, who reside with them.

As a threshold matter, the defendant objects that this proposed class definition is overbroad, to the extent that it includes non-disabled minor children. The Court, however, is of the opinion that non-disabled children may properly be included in the class definition because the State Commissioner's challenged practice affects the amount of money that disabled adults and their spouses can spend on behalf of such children.

■ Proceeding to the plaintiffs' motion, both sides are aware of the four require-

ments of Fed.R.Civ.P. 23(a), *viz.*, numerosity, commonality, typicality, and adequacy of representation. With respect to numerosity, the defendant does not appear to disagree with the plaintiffs' estimate that 360 cases fall within the scope of the class definition. In regard to commonality, a question of law indeed appears to be common to all members of the class—namely, whether the State Commissioner's use of Medicaid budgeting procedures for aged and adult blind or disabled persons which differ from procedures for minor blind or disabled persons violates federal law. Respecting typicality, the named plaintiffs' claims seem typical to those claims that might be asserted by the proposed class members. As for the adequacy of the plaintiffs' representation of absent class members, the defendant maintains that a conflict of interest might exist, insofar as class members might not wish to advocate a position that could affect the benefit levels of minor blind or disabled Medicaid recipients. The Court does not share this position, because it appears to assume that absent class members are more concerned for the welfare of non-class members, namely, minor aged or disabled persons, than for their own welfare. Such a presumption is speculative, and fails to overcome the apparent unity of interest that the named representatives share with the proposed class members. Given this unity of interest, and the experience of the plaintiffs' attorneys in class action welfare litigation, the Court is of the view that the named plaintiffs will adequately protect the interests of absent class members.

■ Having met the requirements of Rule 23(a), the plaintiffs seek also to satisfy the requirements of Fed.R.Civ.P. 23(b)(2). This provision provides for class action certification in actions where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The plaintiffs contend that their action falls under this section because the defendant has

refused to apply the same standards to themselves and the absent class members as she applies to minor blind or disabled persons. As additional reasons for class action certification, the plaintiffs cite the problems of enforcement and mootness. Because the Court is familiar with the enforcement problems in this context, because the illness of Connie Hodecker presents a concrete problem of mootness, and because the complaint indeed charges the State Commissioner with acting on grounds applicable to the class, the Court concludes that the plaintiffs have established the propriety of certification under Fed.R.Civ.P. 23(b)(2).

For these reasons, the plaintiffs' motion for class action certification is granted.

### III.

Turning to the merits of this action, the question presented is whether the Commissioner's policy of budgeting the income of relatives financially responsible for the care of minor blind or disabled Medicaid recipients more favorably than the income of relatives financially responsible for the care of aged and adult blind or disabled Medicaid recipients violates the "comparability" requirements of 42 U.S.C. §§ 1396a(a)(10)(B) and 1396a(a)(17).

### A.

Prior to July, 1981, the Social Security Act contained five so-called "comparability" provisions. Two provisions, set forth in 42 U.S.C. §§ 1396a(a)(10)(C)(i) and 1396a(a)(17), each required States to utilize standards for budgeting Medicaid benefits for "medically needy" persons that were no more restrictive than standards for budgeting Medicaid benefits for "categorically needy" persons who receive Supplemental Security Income [SSI], 42 U.S.C. §§ 1381–1383(c). *See Calkins v. Blum*, 511 F.Supp. 1073 (N.D.N.Y.1981) (Munson, C. J.); *Caldwell v. Blum*, 78–CV–569 (N.D.N.Y., filed November 4, 1980) (Munson, C. J.). In this regard, "medically needy" refers to "aged, blind or disabled individuals ... who are otherwise eligible for Medicaid, who are not categorically needy, and whose income and

resources are within limits set under the Medicaid State plan." 42 C.F.R. § 435.4 (46 Fed.Reg. 47984 (September 30, 1981)). The phrase "categorically needy refers to "aged, blind, or disabled individuals who are otherwise eligible for medicaid and who meet the financial eligibility requirements for ... SSI ..." *Id.* (1980).

Section 1396a(a)(10)(C)(i) provided that (a) a State plan for medical assistance must—

. . . . .

(10) provide—

. . . . .

(C) if medical assistance is included for any group of individuals who are [not recipients of SSI] and who do not meet the income and resources requirements of the appropriate State plan, or the supplemental security income program, ... (i) for making medical assistance available to all individuals who would, except for income and resources, be eligible for aid or assistance under any such State plan or to have paid with respect to them [SSI], and who have insufficient (as determined in accordance with comparable standards) income and resources to meet the costs of necessary medical and remedial care and services, . . . .

Section 1396a(a)(17) closely paralleled the "comparability" theme recited in this section:

(a) A State plan for medical assistance must—

. . . . .

(17) include reasonable standards (which shall be comparable for all groups...) for determining eligibility for and the extent of medical assistance under the plan. . . .

Two other comparability provisions affected only categorically needy persons. Section 1396a(a)(10)(B)(i) required a certain type of comparability among categorically needy individuals:

the medical assistance made available to any [categorically needy] individual . . . —

(i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual.

Section 1396a(a)(10)(B)(ii) specified a narrow rule applicable to categorically needy persons, but measured by reference to medically needy persons:

the medical assistance made available to any [categorically needy] individual . . . —

(ii) shall not be less in amount, duration, or scope than the medical assistance made available to [medical needy] individuals. . . .

Finally, the fifth comparability provision applied only to medically needy persons. As contained in Section 1396a(a)(10)(C)(ii), this rule provided

that medical assistance made available to all [medically needy] individuals . . . shall be equal in amount, duration, and scope.

Under this pre-July, 1981, statutory scheme, the State Commissioner's practice at issue here would clearly be unlawful. By budgeting minor medically and categorically needy persons more favorably than adult medically and categorically and needy persons, the State Commissioner has contravened the requirements that medically needy persons receive treatment comparable to that received by categorically needy persons; that all categorically needy persons be treated comparably; that all categorically needy persons be treated as favorably as medically needy persons; . and that all medically needy persons be treated comparably. On this score, it may be true that the purpose behind treating minor blind and disabled persons differently than similarly situated adults was to encourage the care of such children in their homes. Also, it is true that the federal regulations in effect in July, 1981, had somewhat different rules for spousal, as opposed to parental, responsibility. *Compare* 42 C.F.R. § 435.723 *with* 42 C.F.R. §§ 435.734, .822, .823. Neither the benevolent purpose of the budgeting practice, nor the regulations relied upon by the State Commissioner, however, could have rendered lawful the violations of the statutory provisions regarding comparability.

B.

■ The present state of the law differs from this earlier legal framework. In July, 1981, after the commencement of this action, Congress enacted the Omnibus Budget Reconciliation Act of 1981, P.L. 97–35, 95 Stat. 357. Section 2171(a)(3) of this Act has amended Section 1396a(a)(10)(C)(i) and (ii) by modifying the two principles of comparability that had been directed at medically needy persons. As amended, Section 1396a(a)(10)(C)(i) sets forth this requirement in regard to several identified groups of medically needy persons, including the blind and the disabled:

(i) the plan must include a description of (I) the criteria for determining eligibility of individuals in the group for such medical assistance and (II) the amount, duration and scope of medical assistance made available to individuals in the group.

In the House Conference Report, Congress expressed its intent in revising these former comparability rules:

In the past the comparability language of the statute has been interpreted to mean identical treatment for eligibility criteria and scope of services within the medically needy program and between the categorically needy and medically needy programs. The intent of the amendment is to provide States with flexibility in establishing eligibility criteria and scope of services within the medically needy program to address the needs of different population groups more appropriately.

House Conference Report No. 97–208, 97th Cong., 1st Sess., at 971, *reprinted in* [1981] U.S.Code Cong. & Admin.News, 396, 1333.

As the first sentence of this Report indicates, Congress recognized that the comparability rules embodied in Section 1396a(a)(10)(C) had been interpreted to operate in two contexts: (1) among persons who are medically needy, and (2) between the medically needy group and the categorically needy group. The second sentence of the Report, however, which expresses the

purpose of the amendment, addresses only the first situation, which is comparability among medically needy persons. It appears, then, that Congress intended to modify only the comparability rules among these individuals. In this regard, the recent regulations issued by the Department of Health and Human Services, effective October 1, 1981, have construed the amendments to Section 1396a(a)(10)(C) as requiring comparability only among members within a *group* of medically needy persons, and not between groups of such persons. Although the groups of medically needy persons include the aged, blind, and the disabled, there are no groups designated as adult disabled persons, or adult blind persons, or minor disabled persons, or minor blind persons. *See* 42 C.F.R. § 435.811 (46 Fed.Reg. 47987 (September 30, 1981)); 46 Fed.Reg. 47978–980 (September 30, 1981). *See also* 42 C.F.R. § 435.812(a) (46 Fed.Reg. 47987). Under the new regulations, then, the State Commissioner's practices of budgeting adult blind medically needy persons less favorably than minor blind medically needy persons, and of budgeting adult disabled medically needy persons less favorably than minor disabled medically needy persons, are unlawful.

Furthermore, it appears that Congress has not changed the comparability aspect of Section 1396a(a)(10)(B)(i). Hence to the extent that the State Commissioner's practice has the effect of awarding amounts of Medicaid to minor SSI recipients that differ from amounts of Medicaid to adult SSI recipients, her budgeting scheme violates the comparability rule for categorically needy persons under this Section.

Moreover, the limited congressional intent to alter the comparability rules only as they related to comparability among medically needy persons, and the fact that Congress has neither repealed nor amended the comparability provisions contained in Section 1396a(a)(10)(B)(ii) and 1396a(a)(17) are persuasive evidence that Congress wishes to retain some comparability requirement as between the categorically and medically needy. The exact contours of such a comparability requirement need not be explored

here, however, in view of the other bases for holding that the adult categorically and medically needy have been treated wrongfully.

■ Having concluded that the State Commissioner has violated federal law, this Court is also of the opinion that inasmuch as she is being sued in her official capacity, the State Commissioner enjoys no defense of "good faith." *See Calkins v. Blum, supra.*

For these reasons, the plaintiffs' motion for summary judgment is granted and the defendant's motion for summary judgment is denied.

## IV.

■ The next matter concerns the scope of relief. On this score, the named plaintiffs seek an award of attorneys fees and costs. Because they have certainly prevailed on their motion for summary judgment, they are entitled to an award of fees under 42 U.S.C. § 1988.

■ Beyond this, the named plaintiffs also seek an Order of this Court requiring the State Commissioner to cause the recomputation of their budgets back to the date of the inception of the "209(b)" plan, at which time the plaintiffs were Medicaid recipients. Such relief seems reasonable and lawful, insofar as it is not barred under the Eleventh Amendment. *See also Caldwell v. Blum, supra.*

■ On behalf of the absent class members, the named plaintiffs first seek an Order directing the State Commissioner to cause the recomputation of class members' budgets for the three months prior to the month of judgment, pursuant to 42 U.S.C. § 1396a(a)(34). As discussed in *Caldwell v. Blum, supra,* this form of relief is appropriate. Additionally, the named plaintiffs request an Order directing the State Commissioner to cause notice to be given to all class members of their right to obtain a recomputation of benefits back either to December 2, 1980, or back twelve months prior to the month in which judgment is entered, which-

ever is earlier. In this case, the twelve month date is the earlier time. This relief also seems proper. *See* 18 N.Y.C.R.R. § 352.31(e)(1); *Toomey v. Blum*, 77 A.D.2d 802, 430 N.Y.S.2d 749 (4th Dep't 1980, *aff'd*, 54 N.Y.2d 669, 442 N.Y.S.2d 774, 426 N.E.2d 181 (1981).

## V.

Finally, in regard to the defendant's application for a limited stay, this application is granted.