Mary Lou McCOY, on behalf of her husband, and their nine minor children, and all other persons similarly situated, Plaintiff,

v.

ITHACA HOUSING AUTHORITY, a municipal housing authority; Mary Louise Battisti, as Executive Director of the Ithaca Housing Authority, Barbara Blum, as Commissioner of the New York State Department of Social Services; and Robert Wagner, as Commissioner of the Tompkins County Department of Social Services, Defendants.

No. 80–CV–345.

United States District Court, N.D. New York.

March 29, 1983.

Strom, Masson & Pozner, Cornell Legal Aid, Ithaca, N.Y., for plaintiff; Barry Strom, Robin Abrahamson Masson, Ithaca, N.Y., of counsel.

Van Lengen, Sanford, Papworth & Trespasz, Syracuse, N.Y., for defendants Ithaca Housing Authority and Mary Louise Battisti; John T. Papworth, Syracuse, N.Y., of counsel.

Rochelle Q. Alexander, Social Services Atty., Ithaca, N.Y., for defendant Wagner Tompkins County Dept. of Social Services.

Robert Abrams, Atty. Gen., Albany, N.Y., for defendant Blum; James McSparron, Richard J. Freshour, Asst. Attys. Gen., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

### FACTS

Plaintiff Mary Lou McCoy and her family live in Tompkins County, New York and are recipients of public assistance under the Aid to Families with Dependent Children Program [AFDC]. At the time of the commencement of this action, plaintiff and her family resided in an apartment operated by defendant Ithaca Housing Authority, a federally funded public housing authority. In addition to her AFDC grant, plaintiff also receives a shelter allowance from defendant Tompkins County Department of Social Services.

As a resident of public housing, plaintiff was entitled to and did receive a shelter allowance of $107.00 per month. 18 N.Y.C.R.R. § 352.3(d) (1980). If plaintiff resided in private housing, however, she would have been entitled to receive a shelter allowance of her actual rental costs up to a maximum of $247.00 per month. *Id.* § 353.3(a). The problem giving rise to this litigation began in June of 1979 when plaintiff's rent was increased by IHA from $107.00 to $186.00 per month. Subsequently, the rent was increased to $194.00 and then to $205.00. This rental increase caused a great hardship to plaintiff and her family because plaintiff's shelter allowance was not increased to meet her higher rental costs. To meet this added burden, plaintiff directed that funds slated as her non-shelter allowance be paid directly to IHA to cover the difference between her new rent and her shelter allowance of $107.00.

Plaintiff complained to defendant New York State Department of Social Services that her shelter allowance was inadequate, and challenged defendant Wagner's refusal to pay a shelter allowance equal to her family's actual rental costs. Defendant Blum affirmed the refusal to pay actual rental costs in her fair hearing decision and found that plaintiff's correct shelter allowance was the $107.00 she was receiving pursuant to 18 N.Y.C.R.R. § 352.3(d).

After her failure to secure an increase in her shelter allowance at the state administrative level, plaintiff commenced the instant action to challenge the method by which defendants determine shelter allowance grants for persons residing in public housing whose rental costs exceed the public housing shelter allowance. Plaintiff purports to bring this action on behalf of herself and all other persons similarly situated, and alleges jurisdiction based on 28 U.S.C. §§ 1331, 1343, and 1361 (1976 & Supp. V 1981).

Presently before the Court are plaintiff's motion for class certification pursuant to

Rule 23(b)(2) of the Federal Rules of Civil Procedure and plaintiff's motion for summary judgment against defendants Blum and Wagner. As a preliminary matter, however, the Court is presented with the question of whether this entire action is moot by virtue of the fact that plaintiff no longer resides in public housing. Accordingly, before the Court addresses plaintiff's motions, defendants' mootness argument will be examined.

## MOOTNESS

This action was commenced on April 25, 1980 by the filing of a summons and complaint with the Clerk of the Court. Fed.R. Civ.P. 3. Thereafter, an amended complaint was filed on June 2, 1980. Although plaintiff and her family resided in their IHA apartment at the early stages of this action, the family moved to private housing in or about November of 1980. Plaintiff first moved for class certification on October 28, 1981. This motion was adjourned numerous times until it was finally heard on May 18, 1982.

Defendants argue that this case is now moot because plaintiff no longer lives in public housing and, therefore, she has no legally cognizable injury. To the contrary, plaintiff has submitted an affidavit to the Court reaffirming her desire to proceed with this action and expressing her hopes of one day returning to public housing when and if the shelter allowance disparity is corrected. In addition, plaintiff's counsel argues that plaintiff still has "live" claims for declaratory and monetary relief against the various defendants.

To satisfy Article III's requirement of a "case or controversy," the plaintiff must present the court with a "live" case. In other words, the court must have before it a genuine dispute requiring judicial resolution. The dispute must continue throughout the litigation and the plaintiff must keep his "personal stake" in the outcome until the entry of judgment, *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (citing *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969)). The federal courts have, however, fashioned exceptions to the mootness doctrine. For example, a controversy will not be declared moot if it "is capable of repetition, yet evading review." *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973) (citing *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911)). *See also* C. Wright, *Law of Federal Courts,* § 12 at 39 (3d ed. 1976).

In the particular context of class actions, the Supreme Court has considered the importance of the "personal stake" requirement. The most recent pronouncement comes from *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479, where the Court held that an action does not become moot upon expiration of the named plaintiff's claim after the denial of class certification. *Id.* at 407, 100 S.Ct. at 1214. In *Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), decided the same day as *Geraghty,* the Court held that the tender of complete relief to the named plaintiffs after the denial of class certification would not necessarily cause the entire action to become moot. Since the denial of class certification may be appealed following the entry of judgment, *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978), the named plaintiffs could appeal the adverse class certification ruling. 445 U.S. at 336–40, 100 S.Ct. at 1173–1174. The question of effective representation of the class is of course open to challenge in such circumstances. Nevertheless, *Roper* stands for the proposition that conferral of full relief to a plaintiff will not automatically bar further prosecution of the action on behalf of the proposed class.

In the case at bar, plaintiff's injury for which she seeks relief has been lessened due to her moving out of public housing in November of 1980. Thus, plaintiff's situation is markedly different from the plaintiff in *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). In *Sosna,* the Court

held that the mootness of the plaintiff's claim after the certification of the class does not make the entire action moot. In that circumstance, the rights of the unnamed class members still required protection. Rather, the present case is similar to *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), where the Court upheld the granting of class certification after the named plaintiff's claim had expired. While the claims asserted in *Gerstein* were by their very nature short lived (pretrial detention without judicial determination of probable cause), the Court found that there was a constant existence of unnamed class members and that the attorney representing the plaintiffs, a public defender, would vigorously pursue the rights of the unnamed class members. *Id.* at 110–11 n. 11, 95 S.Ct. at 861–862 n. 11.

Here, part of plaintiff's claim for relief became moot after her complaint was filed. Assuming the existence of other unnamed class members, a continuation of this action appears proper. Thus, if plaintiff satisfies the requirements of Rule 23 regarding class certification, the entire action may proceed. However, if plaintiff fails to meet the requirements of Rule 23, the action may proceed as to those issues in which plaintiff still has a "live" interest. Accordingly, the Court will address plaintiff's motion for class certification.

## MOTION FOR CLASS CERTIFICATION

■ Plaintiff seeks to represent a class comprised of "all present or prior AFDC households residing in public housing who receive or have received a shelter allowance less than that which they would have received were they residing in private housing." The Court must, of course, be satisfied that plaintiff has met her burden of proving that the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) have been met. *See generally Hodecker v. Blum,* 525 F.Supp. 867, 870–71 (N.D.N.Y.1981), *aff'd,* 685 F.2d 424 (2d Cir.1982) (mem.); *Percey v. Blum,* 524 F.Supp. 324, 327 (N.D.N.Y. 1981); *Calkins v. Blum,* 511 F.Supp. 1073,

1088–90 (N.D.N.Y.1981); *aff'd,* 675 F.2d 44 (2d Cir.1982) (per curiam); *Jamroz v. Blum,* 509 F.Supp. 953, 956–57 (N.D.N.Y.1981); *Markel v. Blum,* 509 F.Supp. 942, 948–49 (N.D.N.Y.1981).

Before reaching the class certification issue, defendants assert that they have given plaintiff and the Court adequate assurances that they will apply any judgment uniformly on a statewide basis. Thus, in defendants' view, class certification is not necessary. *Wells v. Malloy,* 510 F.2d 74, 76 n. 3 (2d Cir.1975); *Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *Percey v. Blum,* 524 F.Supp. at 327. In response, plaintiff argues that defendants' assurances are inadequate because they do not commit to the sending of notice relief to all members of the class on a statewide basis. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Such notice, according to plaintiff, is an integral part of the relief she seeks for the class. Without the dissemination of *Quern*-type notice, the absent class members will not be advised of the possibility that they may recover past benefits through state judicial or administrative channels. The Court agrees with plaintiff that the assurances provided by defendants are inadequate and will proceed to a discussion of the class certification motion.

Defendants have not challenged plaintiff's ability to meet the requirements of typicality and adequacy of representation. In the Court's view, the claims of plaintiff appear typical of those claims that might be asserted by the proposed class members. *Hodecker v. Blum,* 525 F.Supp. at 870; *Percey v. Blum,* 524 F.Supp. at 327. As to adequacy of representation, the Court notes that plaintiff and the proposed class are represented by able counsel and no conflicts of interest appear to exist. Therefore, the Court will address the requirements of Rule 23(a) that have been challenged by defendants: numerosity and commonality.

Rule 23(a)(1) states that a class may be certified only if "the class is so numerous that joinder of all members is impractica-

ble." In the present case, plaintiff's latest estimate of the size of the class is 2,000 persons. This figure comes from the extrapolation of figures secured through discovery. While it is true that a class should not be certified where the allegations of numerosity are based on mere speculation, *Lloyd v. Industrial Bio-Test Laboratories, Inc.,* 454 F.Supp. 807, 812 (S.D.N.Y.1978), the prevailing view is that "plaintiff need not allege the exact number or identity of class members" and that a "good faith estimate should be sufficient when the number of class members is not readily ascertainable." 1 H. Newberg, *Class Actions,* § 1105h at 178–79 (1977).

This Court has reviewed the various defendants' responses to plaintiff's interrogatories and concludes that plaintiff has met her burden of showing numerosity. Even if plaintiff's estimate of 2,000 class members is substantially overstated to the point that there are only 100 to 200 persons that fit the class definition, such a number would make joinder clearly impracticable. 1 H. Newberg, *supra* § 1105d at 174–76; 7 C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 1762 (1972); 3B J. Moore, *Moore's Federal Practice,* ¶ 23.05[1] (2d ed. 1982).

With regard to Rule 23(a)(2), the requirement that there be common questions of law or fact among the members of the class, the Court finds that plaintiff has met her burden of showing commonality. Defendants contend that some Public Housing Authorities [PHA] in the state have different methods of computing shelter allowances and, therefore, class certification should be denied. Moreover, defendants assert that some PHAs may have availed themselves of the procedure in 18 N.Y.C. R.R. § 352.3(d) which permits upward modification of the shelter allowance provided to welfare families. Because of this distinction, defendants claim that there are serious questions of law and fact that are *uncommon* to the putative class. Regardless of this alleged distinction, it is clear that not *all* questions of law and fact among the putative class must be identical. According to Newberg, "[t]he (a)(2) prerequisite re-

quires only a single issue common to the class." 1 H. Newberg, *supra* § 1110f at 184.

In the present case, plaintiff's counsel has suggested at least six questions or issues that are common to the class. As noted above, the Court need only identify one common question for the purposes of Rule 23(a)(2), and that question is

whether the U.S. Constitution and federal law and regulations permit a Social Services Department to grant an ADC [Aid to Families with Dependent Children] family who resides in public housing a shelter allowance without regard to the family's actual shelter cost, and yet grant an ADC family who resides in private housing a shelter allowance based on the family's actual shelter cost.

Amended Complaint ¶ 16(a). Although other common questions among the class do exist, they need not be identified at this point.

Plaintiff seeks class certification under Rule 23(b)(2). This provision allows for the maintenance of class actions when all of the prerequisites of Rule 23(a) have been met and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ...." Plaintiff has alleged both prongs of the 23(b)(2) requirement and has demonstrated that problems of mootness and enforcement necessitate class action certification. Thus, the requirements of *Davis v. Smith,* 607 F.2d 535, 540 (2d Cir.1978), *vacated and remanded on other grounds,* 607 F.2d 540 (2d Cir.1979), have been met. Moreover, the Court is satisfied that the composition of plaintiff's class is not so broad as to bring it within the purview of *Mercer v. Birchman,* 700 F.2d 828, 835 (2d Cir.1983). Accordingly, plaintiff's motion for class certification is granted.

## MOTION FOR SUMMARY JUDGMENT

■ Plaintiff has moved for summary judgment against defendants Blum and

Wagner pursuant to Rule 56 of the Federal Rules of Civil Procedure. In this Circuit, the law is clear that on a motion for summary judgment, the moving party must show that "there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c); *United States v. One Tintoretto Painting,* 691 F.2d 603, 606 (2d Cir.1982); *Redcross v. County of Rensselaer,* 511 F.Supp. 364, 374 (N.D.N.Y.1981); *Doe v. Syracuse School Dist.,* 508 F.Supp. 333, 337 (N.D.N.Y.1981). Thus, the Court must examine the facts relative to plaintiff's motion and determine if any material facts are in dispute. If there is no such dispute, the Court will determine whether plaintiff is entitled to judgment as a matter of law.

The purpose of the AFDC program is "to provide financial assistance to needy dependent children and their parents or relatives who live with and care for them." *Shea v. Vialpando,* 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974). The program has as one of its principal goals the provision of a method whereby parents and relatives of such children can "attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection." *Id.* (citing 42 U.S.C. § 601 (1976)). Although the vast majority of the funding for the AFDC program comes from the federal government, it is administered on a day-to-day basis by the states in a form of "cooperative federalism." *King v. Smith,* 392 U.S. 309, 316, 88 S.Ct. 2128, 2132, 20 L.Ed.2d 1118 (1968).

States are not required to participate in the AFDC program, but all states have agreed to do so in order to take advantage of the substantial federal funds available for distribution. Participating states must submit a plan for approval by the Secretary of Health and Human Services, *id.,* and such plan must comport with the many requirements of the Social Security Act and the rules and regulations promulgated thereunder. *Id.* at 317, 88 S.Ct. at 2133. The Supreme Court has stated on numerous occasions, however, that the states are to be given broad discretion in determining both the standard of need and the level of benefits to be awarded under the AFDC program. *Shea v. Vialpando,* 416 U.S. at 253, 94 S.Ct. at 1750 (citing *Jefferson v. Hackney,* 406 U.S. 535, 541, 92 S.Ct. 1724, 1729, 32 L.Ed.2d 285 (1972); *Rosado v. Wyman,* 397 U.S. 397, 408–09, 90 S.Ct. 1207, 1215–1216, 25 L.Ed.2d 442 (1970); *Dandridge v. Williams,* 397 U.S. 471, 478, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491 (1970); *King v. Smith,* 392 U.S. at 318–19, 88 S.Ct. at 2134–2135).

The regulations dealing with coverage and eligibility under the AFDC program are found at Part 233 of Title 45 of the Code of Federal Regulations. Section 233.-20 of that Part provides

(a) *Requirements for State Plans.* A State Plan for ... AFDC ... must ...

. . . .

(2) *Standards of assistance.* (i) Specify a statewide standard, expressed in money amounts, to be used in determining (*a*) the need of applicants and recipients and (*b*) the amount of the assistance payment

. . . .

. . . .

(iii) Provide that the standard will be uniformly applied throughout the State. . . .

45 C.F.R. § 233.20(a)(2)(i), (iii) (1982). Thus, no matter what amount of money a state designates for use in its AFDC plan, the program must apply that amount uniformly across the state.

In New York, the legislature has vested the Department of Social Services with the power to distribute and grant funds appropriated by both the state and federal governments for social welfare programs. N.Y.Soc.Serv.Law § 20(2)(c) (McKinney Supp.1982–83). Pursuant to Section 131–a of the Social Services Law, the Department is authorized to promulgate regulations establishing shelter allowance grants for needy families. *Auburn Housing Auth. v. State Dep't of Social Servs.,* 110 Misc.2d 231, 233, 441 N.Y.S.2d 875, 877 (Sup.Ct., Cayuga Co. 1981). These regulations are, of course, found in Title 18 of the New York Code of Rules and Regulations and are the subject of this action.

The Department of Social Services has set maximum monthly shelter allowance figures for all social service districts within the state. These allowances, applicable to persons residing in private housing, are maximum amounts and are not necessarily the amount expended by either the recipient of the allowance or the Social Services Department. For example, a shelter allowance recipient with eight or more persons in the household residing in Tompkins County is allowed $184.00 per month for housing without heat, or $247.00 per month for housing with heat included. 18 N.Y.C.R.R. § 352.3(a). If the actual rent charge for the family is $200.00 for a residence with heat included, the monthly shelter allowance would be $200.00. However, if the rental charge is $300.00 for a residence with heat included, the family would only be entitled to receive $247.00, the maximum shelter allowance grant authorized by section 352.3(a).

In the case of shelter allowance recipients living in city, state or federally assisted public housing, the Department of Social Services has established a set schedule of rents to be paid depending on the size of the apartment. 18 N.Y.C.R.R. § 352.3(d). In the case of plaintiff McCoy, who was residing in a four bedroom apartment, the rent allowance would be $107.00, regardless of the actual rent paid. Thus, if the actual rental charge was $100.00, the family would gain a $7.00 surplus. But in cases where the actual rental charge exceeded the statutory figure, the family would have to make up the difference from other funds. In plaintiff's situation, her rent was increased above the $107.00 figure several times until it reached $205.00 per month. Despite these increases, plaintiff's shelter allowance remained at $107.00 per month, and plaintiff's family was forced to shift $98.00 from funds earmarked for non-shelter purposes and use it to pay the rent.

It should be noted that section 352.3(d) contains a provision whereby a PHA can obtain an upward modification of the rent schedule. *See generally Auburn Housing Auth. v. State Dep't of Social Servs.,* 110 Misc.2d 231, 441 N.Y.S.2d 875. The Ithaca

Housing Authority has not, however, taken advantage of this procedure. Defendants have seized upon this procedure in section 352.3(d) and argue that plaintiff should not prevail because her rental allowance *could* have been increased to meet her actual rental costs. In her reply memorandum, plaintiff asserts that defendants' argument is in reality a ploy to get the Court's attention away from the true issue in the case, namely, whether defendant Blum, in creating disparate shelter allowances for public and private housing, has complied with the uniformity requirement of the Social Security Act.

In *Boddie v. Wyman,* 434 F.2d 1207 (2d Cir.1970), *aff'd,* 402 U.S. 991, 91 S.Ct. 2168, 29 L.Ed.2d 157 (1971) (mem.), the Second Circuit upheld Judge Foley's grant of a preliminary injunction against the enforcement of a New York regulation that provided for disparate shelter allowance grants in different areas of New York State. The court found that there was a complete "failure of objective support" for the shelter allowance differentials and, therefore, the regulation violated the Social Security Act, 42 U.S.C. § 602, and its requirements of statewide uniformity, 45 C.F.R. § 233.-20(a)(2)(iii). In so holding, the court recognized that "the existence of arbitrary differences in welfare payments between areas in the same state ... [was apparently] one of the reasons for the enactment of the legislation in its eventual form." 434 F.2d at 1210. Absent objectively verifiable cost differentials in the different areas in the state, the court held that such a regulation could not stand.

In *Roberge v. Philbrook,* 518 F.2d 162 (2d Cir.1975), the court relied on its earlier decision in *Boddie v. Wyman* and upheld a cost differential in the Vermont welfare regulations. Unlike the situation in *Boddie* where the court found a "failure of objective support" for the cost differential, the Vermont regulation was supported by objectively established cost differentials. *Id.* at 163. Thus, the departure from the uniformity requirement in *Roberge* was permitted by the Social Security Act and its attendant regulations.

To support the disparate shelter allowances between public and private housing, defendants assert that it was "entirely reasonable for the State to assume that rentals charged by highly subsidized public housing authorities would be lower than those charged by private landlords." *See Auburn Housing Auth. v. State Dep't of Social Servs.,* 110 Misc.2d at 233–234, 441 N.Y.S.2d at 877–78 (discussing the rationale for different schedules for public and private housing). This assumption has not been challenged in the present case. The parties have submitted no figures as to the comparative costs of public and private housing in New York State. Rather, the problem in this case is the manner in which the Department of Social Services distributes shelter allowance funds for public housing residents.

Rents in federally funded PHAs are set in accordance with the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437 *et seq.,* and its accompanying regulations, 24 C.F.R. Part 8601, Subpart D (1982). Plaintiff does not contest either the manner in which rents are set or the specific amount of rent set for her apartment. Instead, she challenges the amount of shelter allowance granted by the Department of Social Services to meet that rent figure. In plaintiff's view, defendants' compliance or noncompliance with the United States Housing Act is irrelevant to her cause. Plaintiff argues simply that in administering the AFDC program in New York, defendants must comply with the mandates of the Social Security Act. Moreover, since the shelter allowance grants are not distributed uniformly throughout the state (vis-a-vis public and private housing), defendants have violated the Social Security Act and the regulations promulgated thereunder.

In this Court's view, plaintiff has failed to meet her burden on the motion for summary judgment. While there is a disparity in the way that the Department of Social Services distributes its shelter allowance grants, the Court is not convinced that this disparity violates the uniformity requirement of 45 C.F.R. § 233.20(a)(2)(iii). It appears that all persons in plaintiff's class of present or prior AFDC households residing in public housing receive the same amount of money as a shelter allowance. 18 N.Y.C.R.R. § 352.3(d). Similarly, all persons residing in private housing receive the same amount of shelter allowance (assuming equal family size and same county location).

Unlike the situation in *Boddie v. Wyman* and *Roberge v. Philbrook,* there is no absence of uniformity within the class of persons that plaintiff represents. Rather, all persons within the class receive the same amount of shelter allowance. Plaintiff alleges that had she resided in private housing, the amount of her shelter allowance would have equalled or been substantially closer to her actual rental costs. This is mere speculation on the part of the plaintiff. This Court has been presented with no figures on comparative housing costs between the public and private sector, and plaintiff's assertion that she would have been better off financially had she lived in private housing is without foundation.

Accordingly, the Court finds that plaintiff has not demonstrated that she is entitled to judgment as a matter of law. Therefore, plaintiff's motion for summary judgment is hereby denied. This denial is without prejudice and with leave to renew should plaintiff be able to support her claim that New York's method of disbursing shelter allowances violates the uniformity requirement of 45 C.F.R. § 233.20(a)(2)(iii). In this regard, the Court finds that material issues of fact are still in dispute with respect to comparable housing costs between public and private housing. In addition, it appears as though plaintiff is asking this Court to compare the treatment her class of AFDC households residing in public housing receives with the treatment an entirely different class of persons receives (AFDC households residing in private housing). The Court is not convinced that such a comparison is proper, and even if it is, whether a disparity between the two classes would violate the uniformity requirements of the Social Security Act.

## CONCLUSION

In conclusion, the Court hereby grants plaintiff's motion for class certification and finds that this action is not moot by virtue of the fact that plaintiff no longer resides in public housing.

With respect to the motion for summary judgment against defendants Blum and Wagner, the Court hereby denies plaintiff's motion without prejudice.

It is so Ordered.