Lashieka JACKSON, by Her Next Friend, Delores FORREST, on Behalf of Herself and all Other Individuals Similarly Situated, et al., Plaintiffs,

v.

Peter MULLANY, Individually and as Deputy Counsel of the New York State Department of Social Services; W. Burton Richardson, in his Official Capacity as Director of the Monroe County Department of Social Services, Defendant,

and

Richard Staszak, in his Official Capacity as Director of the Schenectady County Department of Social Services, Defendant–Intervenor.

Cesar PERALES,* Individually and as Commissioner of the New York State Department of Social Services, Defendant & Third-Party Plaintiff,

v.

Otis R. BOWEN, Secretary of the United States Department of Health and Human Services, Third-Party Defendant.

No. 80-CV-927.

United States District Court, N.D. New York.

March 9, 1989.

See also 559 F.Supp. 806.

* Substituted pursuant to Fed.R.Civ.P. 25(d)(1).

Monroe County Legal Assistance Corp., Rochester, N.Y., Legal Aid Society of Northeastern New York, Albany, N.Y., Legal Services of Central New York, Syracuse, N.Y. (Brian Hetherington, Susan C. Antos, and Christopher Caden, of counsel), for plaintiffs and intervenor plaintiffs.

Robert Abrams, Atty. Gen. of State of N.Y., Syracuse, N.Y. (Joanne H. Piersma, Asst. Atty. Gen.), for New York State defendants.

James A. Robinson, Monroe County Dept. of Social Services, Rochester, N.Y., for Monroe County defendants.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y. (William Larkin, Asst. U.S. Atty., of counsel), for third-party defendant.

Frank Tedeschi, Schenectady, N.Y., for defendant-intervenor Staszajk.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

On February 28, 1989, the court heard oral argument on several motions in this case. A bench decision was rendered with respect to those motions. The parties were advised that a written decision would follow.

## BACKGROUND

To put these motions in context, a brief background of this protracted litigation is warranted. In November, 1980, this action was commenced to challenge two aspects of the administration of the federal program Aid to Families with Dependent Children ("AFDC") by the New York State Department of Social Services ("DSS") and Monroe County. In particular, plaintiffs were challenging DSS' refusal to comply with governing court decisions forbidding them from automatically considering Old Age Survivors Disability Insurance ("OASDI") children's benefits as income to public assistance recipients who lived with children for whom the OASDI benefits were granted. The second challenge was with respect to DSS' practice of granting larger reductions of public assistance benefits in a "Decision After Fair Hearing" than DSS proposed in the Notice of Intent sent to the recipient.

On December 4, 1981, this court certified a class and issued a preliminary injunction on the first challenge set forth above. Thereafter, Congress amended the AFDC program when it enacted § 2640(a) of the Deficit Reduction Act of 1984 ("DEFRA"), Pub.L. No. 98–369, 98 Stat. 494, 1145, 42 U.S.C. § 602(a)(38). Basically that amendment requires that when state AFDC plans are determining the need of a dependent child, included in that calculation must be any parent of the child and any brother or sister of the child who "meets the conditions described in clauses (1) and (2) of section 606(a) of [title 42]," 42 U.S.C. § 602(a)(38), so long as the parent or siblings are living in the same home as the dependent child.

The Secretary of the Department of Health and Human Services ("the Secretary") then promulgated the following regulation to implement § 602(a)(38):

For AFDC only, in order for the family to be eligible, an application with respect to a dependent child must also include, if living in the same household and otherwise eligible for assistance: ...

(B) Any blood-related or adoptive brother or sister.

45 C.F.R. § 206.10(a)(1)(vii)(B). To bring it into compliance with § 602(a)(38) and the corresponding regulation, New York amended its Social Services Law by adding

§ 131–c(1).[1] The effect was to reduce plaintiffs' AFDC benefits.

In response to the enactment of § 131–c(1), plaintiffs filed an amended complaint alleging that that provision conflicts with several provisions of the Social Security Act ("SSA"), and further alleging that it is unconstitutional. (Because § 131–c(1) was enacted solely to comply with the federal regulation, plaintiffs, by implication, make those same arguments with respect to the federal regulation.) In turn, the State filed a third party action against the Secretary claiming that if they have any liability because § 131–c(1) is invalid, then the Secretary's implementing regulation is invalid as well, and the Secretary is also liable because the State would not have enacted § 131–c(1) if it had not been required to do so under federal law.

The State moved for summary judgment and the Secretary moved to dismiss count III of the amended complaint and to dismiss the third party complaint in its entirety.[2] Count III of the amended complaint alleges that § 131–c(1) violates 42 U.S.C. §§ 408(e) and 602(a)(38), as well as the due process, equal protection and taking clauses of the United States Constitution. In the event the court were to declare § 131–c(1) unconstitutional and in contravention of other provisions of the SSA, the third-party complaint seeks to have the court also declare 42 U.S.C. § 602(a)(38) and the federal family implementing regulation unconstitutional and in contravention of the SSA. Plaintiffs have cross-moved for summary judgment.[3]

## DISCUSSION

### I. Declaratory Relief

█ Plaintiff's first argument, which is independent of their statutory and constitutional claims, is that they are entitled to declaratory relief. Specifically, plaintiffs are seeking a declaration that the State's former policy of automatically considering OASDI benefits as income to public assistance recipients who lived with the children for whom the Social Security benefits were granted violated the AFDC regulations in existence at the time. Plaintiffs are seeking such declaratory relief so that they may pursue claims for monetary damages in state court, and to protect them from future claims of overpayment based upon the injunction previously issued herein.

Courts have recognized that such independent claims for monetary damages are appropriate. *See e.g., Hodecker v. Blum,* 525 F.Supp. 867, 873–74 (N.D.N.Y.1981), *aff'd without decision,* 685 F.2d 424 (2d Cir.1982) (Granting prevailing plaintiffs' request for order directing State Social Security Commissioner to notify class members of right to obtain recomputation of Medicaid benefits where court determined Commissioner violated federal law in making original computations); *Toomey v. Blum,* 77 A.D.2d 802, 430 N.Y.S.2d 749

---

**1.** That statute reads as follows:

For the purposes of determining eligibility for and the amount of assistance payable, the social service district shall, when a minor is named as an applicant for public assistance, require that his or her parents and minor brothers and sisters also apply for assistance and be included in the household for purposes of determining eligibility and grant amounts, if such individuals reside in the same dwelling unit as the minor applying for assistance. Any income of or available for such parents, brothers and sisters which is not disregarded under subdivision eight of section one hundred thirty-one-a of this article, shall be considered available to such household. The provisions of this subdivision shall not apply to individuals who are recipients of federal supplemental security income benefits or additional state payments pursuant to this chapter, or to individuals whose relationship to the minor is that of stepbrother or stepsister, or to any other individuals whose needs are excluded pursuant to department regulations consistent with federal law and regulations.

N.Y.Soc.Serv.Law § 131–c(1) (McKinney Supp 1989).

**2.** The Director of the Monroe County Department of Social Services, who is also a defendant in this action, did not file a separate motion; rather he is relying upon the positions taken by the State and the Secretary. *See* Letter of James A. Robinson (February 24, 1989).

**3.** The court notes in passing that the parties have consented to hold in abeyance that portion of plaintiffs' motion seeking summary judgment on the individual due process claims because a settlement of those claims is imminent.

(4th Dep't 1980), *aff'd,* 54 N.Y.2d 669, 442 N.Y.S.2d 774, 426 N.E.2d 181 (1981) (Plaintiffs entitled to bring state court proceeding for retroactive medical assistance benefits subsequent to federal district court action). The State does not oppose such relief. Therefore, the court grants plaintiffs' cross-motion for declaratory relief as aforesaid.

## II. Plaintiffs' Sixth Claim

Plaintiffs wisely conceded that their sixth claim is foreclosed by the Supreme Court's decision in *Bowen v. Gilliard,* 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987), and thus they withdrew that claim. Plaintiffs' withdrawal of their sixth claim renders defendants' motions moot in regard to that claim.

## III. Statutory Claims

### 42 U.S.C. § 602(a)(38)

■ The first issue presented by these motions involves the interpretation of 42 U.S.C. § 602(a)(38), which provides:

A State plan for aid and services to needy families with children must— ...

(38) provide that in making the determination under paragraph (7) with respect to a dependent child and applying paragraph (8), the State agency shall (except as otherwise provided in this part) include—

(A) any parent or such child, and

(B) any brother or sister of such child, if such brother or sister meets the conditions described in clauses (1) and (2) of section 606(a) of this title or in section 607(a) of this title (if such section is applicable to the State), if such parent, brother, or sister is living in the same home as the dependent child, and any income of or available for such parent, brother, or sister shall be included in making such determination and applying such paragraph with respect to the family (*notwithstanding section 405(j) of this title,* in the case of benefits provided under subchapter II of this chapter);

42 U.S.C. § 602(a)(38) (West Supp.1988) (emphasis added). In essence, the parties dispute the meaning of the highlighted language. Defendants interpret § 602(a)(38) to mean that Congress intended that in determining AFDC eligibility, the income of all siblings of an AFDC recipient must automatically be included in the family filing unit.

Relying upon the district court's decision in *Gorrie v. Heckler,* 624 F.Supp. 85 (D.Minn.1985), which the Eighth Circuit subsequently reversed, plaintiffs contend that by enacting § 602(a)(38) Congress actually intended "to stop the previous practice whereby families who shared living expenses *in fact* could *elect* to avoid having that commutative income counted for AFDC purposes." *Id.* at 89, *rev'd, Gorrie v. Heckler,* 809 F.2d 508 (8th Cir.1987). Stated somewhat differently, plaintiffs contend that Congress enacted § 602(a)(38) to prevent the following situation, which was apparently common in three-generation households. Evidently the common prior practice was for grandmothers, acting as representative payees for their minor daughters, to refuse to use the minor daughters' OASDI benefits to support the children of the minor daughters (which the minor daughters were obligated to support).

The court refuses to adopt plaintiffs' limited interpretation of § 602(a)(38). Instead, as the Eighth Circuit did in *Gorrie v. Bowen,* 809 F.2d 508 (8th Cir.1987), the court finds that § 602(a)(38) means:

[t]hat Congress intended that all coresident siblings of a dependent child applying for AFDC and their income, including Title II Social Security benefits and child support, should be counted in determining need and thus eligibility for AFDC assistance.

*Id.* at 516. *See also, Bradley v. Austin,* 841 F.2d 1288 (6th Cir.1988); *Oliver v. Ledbetter,* 821 F.2d 1507 (11th Cir.1987).

The court is also persuaded by footnote five in *Bowen v. Gilliard,* 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987). In *Bowen,* the Supreme Court stated:

In support of the District Court's judgment, appellees have asked us to adopt a

construction of the statute that is completely inconsistent with the intent of Congress as explained in the Secretary's request for the legislation, in the Senate Report, and in the Conference Report as well. Moreover, the arguments are inconsistent with the unambiguous regulations the Secretary has adopted to implement the statute. See 45 CFR § 206.10(a)(1)(vii) (1986). The District Court carefully considered these statutory arguments and rejected them. *Gilliard v. Kirk*, 633 F.Supp. 1529, 1548 (WDNC 1986). We agree with that court's analysis of the meaning of the statute and find no merit in appellees' statutory arguments advanced in this Court. See also *Gorrie v. Bowen*, 809 F.2d 508, 513–516 (CA8 1987).

*Id.* 107 S.Ct. at 3013 n. 5. Although the Supreme Court did not elaborate on appellees' [plaintiffs] statutory arguments in that footnote, a review of the appellees' brief, as well as the district court decision, indicates that those arguments focused on the meaning of § 602(a)(38). Therefore, the Court's cite to *Gorrie* seems to indicate that it would follow the Eighth Circuit's reasoning if forced to squarely address the issue of the proper interpretation to be afforded § 602(a)(38). For those reasons, the court declines to adopt the interpretation of § 602(a)(38) offered by the plaintiffs herein.

### B. 42 U.S.C. § 408(e)

■ In addition to disputing the meaning of § 602(a)(38), plaintiffs assert that § 131–c(1), and by implication, the federal regulation, violate 42 U.S.C. § 408(e). Section 408(e) makes it a felony for a representative payee to breach his or her legally imposed fiduciary duty to spend the benefits solely "for the use and benefit" of the beneficiaries.[4] It is plaintiffs' contention that compliance with § 131–c(1) and the corresponding federal provisions requires a

Social Security representative payee to violate his or her fiduciary duty to use Title II benefits only for the "use and benefit of the child," thereby subjecting the representative payee to criminal sanctions as provided for under § 408(e).

Once again, however, the Eighth Circuit has had occasion to specifically consider and reject plaintiffs' position. In rejecting plaintiffs' argument that the federal regulation is inconsistent with the representative payee statute, the *Gorrie* Court explained:

Section 602(a)(38), by its own terms, is to be enforced 'notwithstanding' the representative payee provisions of Title II. This express reference to section 405(j) clearly indicates that Congress anticipated the alleged incongruence between the implementation of section 602(a)(38) and section 405(j)....... Congress resolved the potential conflict by providing that the statutory obligations of representative payees should not be applied to interfere with the operation of section 602(a)(38). It readily follows that the criminal sanctions of section 408(e) are unenforceable in such circumstances....

*Gorrie*, 809 F.2d at 518 (citations omitted). The court finds convincing the Eighth Circuit's reasoning, and thus refuses to accept plaintiffs' position on this issue.

### C. 42 U.S.C. § 407(a)

■ One of the established safeguards to protect beneficiaries of Title II payments is a provision of the SSA commonly referred to as the "anti-alienation" provision. That provision states:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other

---

**4.** That statute states:

Whoever— ...
(e) having made application to receive payment under this subchapter for the use and benefit of another and having received such a payment, knowingly and willfully converts such a payment, or any part thereof, to a sue

other than for the use and benefit of such other person; ...
shall be guilty of a felony and upon conviction thereof shall be fined not more than $5,000 or imprisoned for not more than five years, or both.
42 U.S.C. § 408(e) (West 1983).

legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a) (West 1983). Plaintiffs contend that § 131–c(1) runs afoul of that provision because it compels a transfer of Title II payments by the beneficiary to his or her needy siblings.

The court is again persuaded by the Eighth Circuit's reasoning in *Gorrie* and thus finds that § 131–c(1) does not conflict with 42 U.S.C. § 407(a). The Eighth Circuit reasoned:

> The anti-alienation provision 'imposes a broad bar against the use of any legal process' to reach Social Security benefits.... *The Secretary's rule does not subject Title II benefits to legal process, however, nor does it result in an assignment or transfer of benefits.* It requires only that Title II benefit recipients apply for AFDC and have their incomes included in the family filing unit. *This does not constitute a use of legal process to garnish or attach benefits.* ... The Title II benefits checks are not actually received and then disbursed by the state agency rather, they continue to go directly to the child's representative payee.... The regulation results in an inclusion of income, not an assignment or transfer of Title II benefits. To the extent that sharing of income among family members occurs after the benefits are paid to the representative payee, it is not prohibited by the anti-alienation provision.

*Id.* at 517 (emphasis added) (citations omitted). *See also, Bradley v. Austin*, 841 F.2d 1288 (6th Cir.1988) (While recognizing that the "strongest support for plaintiff's position" was the anti-alienation provision, the Court nonetheless adopted the reasoning of the *Gorrie* Court in rejecting plaintiff's argument.)

### IV. *Plaintiffs' Alternative Relief*

■ In the alternative, plaintiffs are seeking a judgment requiring the State to consider the first $50.00 of a child's monthly OASDI benefits as child support for purposes of 42 U.S.C. §§ 602(a)(8)(A)(vi)

and 657(b)(1).[5] Included in the DEFRA was a "$50.00 disregard" provision, which states:

> A State plan for aid and services to needy families with children must— ...
>
> provide that, with respect to any month, in making the determination under paragraph (7), the State agency—
>
>> shall disregard the first $50 of *any child support payments* received in such month with respect to the dependent child or children in any family applying for or receiving aid to families with dependent children (including support payments collected and paid to the family under section 657(b)) of this title);....

42 U.S.C. § 602(a)(8)(A)(vi) (West Supp. 1988) (emphasis added). Plaintiffs assert that OASDI benefits constitute "child support" within the meaning of that provision, and therefore, the $50 disregard should apply to those benefits as well. Plaintiffs further assert that these children would be denied equal protection if the court were to determine that the $50 disregard does not apply to OASDI benefits.

Calling that argument "novel," the Secretary responds that plaintiffs' "claim ... strains the construction of 'child support' beyond any reasonable bounds." Secretary's Reply Memorandum of Law at p. 25. Relying upon *Todd v. Norman*, 840 F.2d 608 (8th Cir.1988), the Secretary asserts that plaintiffs' argument must fail. In *Todd*, the Eighth Circuit expressly held that OASDI benefits are not "child support payments" within the meaning of § 602(a)(8)(A)(vi).

Plaintiffs rely, *inter alia*, upon a decision by Judge Williams of the Eastern District of Virginia. *Carter v. Bowen*, slip op. 86–0398–R (E.D.Va.1987). After carefully considering the decisions in *Todd* and *Carter*, as well as the other case authority cited by plaintiffs, this court adopts the thoughtful analysis of the court in *Carter*.

Specifically, in *Carter* the court cogently reasoned:

---

**5.** This section refers to funds collected by the State support collection unit.

No legislative history for § 602(a)(8)(A)(vi) exists to support the defendants' incentive argument. In *Todd v. Reagen*, ..., a case relied on by the defendants, the court referred to the legislative history of the predecessor of § 602(a)(8)(A)(vi), and determined that "the purpose of the disregard was to create a financial incentive to AFDC recipients to assist the state in collecting child support." ... Not only is it improper to infer one Congress' intent from the activities of another Congress, ..., but the legal requirements placed on the AFDC family have changed. In 1974 when the predecessor section was enacted recipient cooperation was not a requisite to receiving AFDC aid. In 1984, cooperation was a requisite, and the AFDC recipients had existing incentives to ensure that child support payments were made. Moreover, amendments to 42 U.S.C. § 658 have enhanced the states' incentives for tracking down nonresident parents who are delinquent in making child support payments. The argument that the $50 disregard provision provides a financial incentive has lost much, if not all, of its force in the intervening thirteen years.

The Supreme Court in *Gilliard* suggested that the purpose of the $50 disregard provision is to mitigate the family's reduction in benefits. In describing the 1984 DEFRA amendments, the Court wrote: "The burden of the change was mitigated somewhat by a separate amendment providing that the first $50 of child support collected by the state must be remitted to the family and not counted as income for the purpose of determining its benefit level." ... Since AFDC families with children supported by Social Security bear the same "burden of change" as do families with children supported by child support payments, Social Security families deserve the same benefits of mitigation provided by 42 U.S. § 602(a)(8)(A)(vi).

The defendants' [sic] argue that if Social Security benefits fall within the meaning of the provision's "any child support," then all AFDC benefits are a form of "child support" and everyone should get the $50 remittance. The defendants fail to see the distinction between AFDC benefits—a welfare benefit which is set according to number of members in one's family—and child support and Social Security benefits which are derived from the parent's earning capacity. For this reason, many states have considered Social Security benefits a type of "child support". *See e.g. Ledbetter v. Foster*, 180 Ga.App. 696, 350 S.E.2d 31 (1986).

Although the construction of a statute by an agency charged with its administration is entitled to considerable deference, the Secretary's interpretation of § 602(a)(8)(A)(vi) appears to be "demonstrably irrational." ... The "any child support" language in 42 U.S.C. § 602(a)(8)(A)(vi) includes Social Security benefits paid to children of families receiving AFDC. To limit the phrase to only state ordered child support payments would be irrational. The applicability of the $50 disregard provision should not turn upon the health of the supporting parent. Rather the purpose of the provision is to mitigate the hardship imposed by the DEFRA amendments to the AFDC program. Whether the AFDC families include children receiving child support payments or Social Security benefits, the families suffer equally under the DEFRA amendments. Hence the families should also equally enjoy the same limited relief provided by the Act's disregard provision.

Having resolved the matter on the basis of statutory construction, the Court sees no need to address the Equal Protection argument.

Slip op. at p. 8–10 (citations omitted). Based upon that reasoning, the court concludes that OASDI benefits constitute child support within the meaning of 42 U.S.C. § 602(a)(8)(A)(vi).

*V. Class Notification*

■ In light of the foregoing, there is one final issue for the court's consideration and that is the issue of notice. Plaintiffs are asking this court, in its equitable powers, to require that both the State and the

Secretary notify all New York representative payees in the class that they will not be in violation of 42 U.S.C. § 408(e) if they use OASDI benefits of non-legally responsible relatives to support AFDC recipients. In the event the court directs the State and the Secretary to provide the requested notice, plaintiffs also want those defendants to file with the court proof of compliance with that notice requirement before the State is allowed to consider OASDI children's benefits as available to the AFDC household.

According to plaintiffs, "The Secretary has told other courts that he will be changing the representative payee regulations to permit spending of the OASDI children's benefits on AFDC household members for whom the OASDI recipient is not legally responsible. To date they have not been changed." Plaintiffs' Memorandum of Law at p. 52. The Secretary conceded at oral argument that as of February 28, 1989, no new regulations had been "finalized," but that new regulations were proposed in August of 1988. Because of those proposed regulations, the Secretary asserted that requiring notice would be "premature." On the other hand, the State orally acknowledged that it would notify the county DSS offices, which in turn will notify the families effected, if the court were to vacate the prior injunction and adopt plaintiffs' position regarding the $50.00 disregard.

The court is of the opinion that notice of the court's decision herein is imperative to apprise the plaintiff class of their rights and obligations as a result of this court's rulings.[6] Further, the court believes that notice should be provided by *both* the State and the Secretary. It is in the defendants' discretion, however, as to how that notice will be provided. The State and Secretary may each send out separate notifications, or they may send out a joint notice; either way the Secretary must clearly explain

that compliance with 42 U.S.C. § 602(a)(38) and 45 C.F.R. § 206.10(a)(1)(vii)(B) does not violate 42 U.S.C. § 408(e), nor does such compliance violate 42 U.S.C. § 405(j) and 20 C.F.R. § 404.2035. In addition, the plaintiff class will obviously have to be notified regarding the court's decision to allow the $50.00 disregard set forth in 42 U.S.C. § 602(a)(8)(A)(vi) for the first $50.00 of a child's monthly OASDI benefit payment. Lastly, notice should be given that the prior injunction has been vacated by virtue of this order and judgment.

Accordingly, the court hereby declares:
(1) that the State's former policy of automatically considering OASDI benefits as income to public assistance recipients who lived with the children for whom the Social Security benefits were granted violated the AFDC regulations in existence at the time.

Further, the court hereby orders that:
(2) the State defendant's motion for summary judgment is granted with respect to the remaining claims;
(3) the third-party defendant's motion to dismiss the third-party complaint is granted, as is its motion to dismiss count III of the first amended complaint;
(4) the plaintiffs' cross-motion for summary judgment is granted with respect to their claim for alternative relief, as discussed above; and
(5) the State defendant and the third-party defendant are directed to comply with the notice requirements set forth herein.

IT IS SO ORDERED.

---

**6.** Indeed, Fed.R.Civ.P. 23(d)(2) expressly grants the court the authority to order that such notice be given. That Rule provides:
> In the conduct of actions to which this rule applies, the court may make appropriate orders: ... (2) requiring, for the protection of

the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, ...