**Leon M. LAYDEN, Plaintiff,**

v.

**Earl COSTELLO, As Commissioner of the Washington County Department of Social Services, Harold Gould, individually and as Chairman of the Washington County Board of Supervisors, and Washington County Board of Supervisors, Defendants.**

No. 80–CV–300.

United States District Court,
N. D. New York.

March 30, 1981.

DeGraff, Foy, Conway, Holt-Harris & Mealey, Albany, N. Y., for plaintiff; Carroll J. Mealey, Albany, N. Y., of counsel.

James C. Tomasi, Salem, N. Y., for defendants.

## MEMORANDUM—DECISION AND ORDER

MUNSON, Chief Judge.

Plaintiff Leo Layden is the incumbent attorney for the Department of Social Services in Washington County, New York, and brings this action for injunctive and monetary relief to prevent his dismissal from the Department due to his political affiliation. More specifically, plaintiff alleges that the Republican Commissioner of the Department, Earl Costello, notified plaintiff by letter dated April 7, 1980 that his term as the attorney for the Department was to expire, and that it was the Commissioner's intention to appoint a successor. Mr. Layden maintains, however, that the only reason for his pending dismissal is because of his Democratic Party affiliation. He then commenced this action under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 against Commissioner Costello, the Washington County Board of Supervisors and its Chairman, Harold Gould, alleging that his dismissal would violate his First and Fourteenth Amendment rights under the Constitution. Subsequently, defendants were ordered to show cause on April 14, 1980 why a preliminary injunction should not issue to restrain them from dismissing plaintiff. The parties thereafter stipulated to maintain the status quo pending a trial on the merits (which was held on June 3, 1980) and this Court's decision.

The facts in this law suit are not substantially in dispute and are as follows. In November of 1977 the Washington County Board of Supervisors came under Democratic Party control for the first time in the modern political history of the County. The members of the Democratic caucus, and its new Chairman, Lewis Fisher, selected plaintiff for the position as attorney for the Washington County Social Services Department. Apparently, not only was it traditional for Republicans to win the Washington County Seat, but it was also a well established practice for the Social Services attorney's position to be selected on the basis of political patronage. Hence, plaintiff's Democratic Party membership enabled him to get the job, even though the Commissioner of the Department was Republican, and had the actual power over the appointment.

The position of attorney for the Social Services Department is created by N. Y. Social Services Law § 66(1) (McKinney Supp.) which states "The legislative body of the county may authorize the appointment of . . . attorneys it considers necessary to carry out the provisions of this chapter." This Section contemplates that these attorneys shall be "performing the duties assigned to them by the county commissioner . . . .," or, in other words, serve at the pleasure of the county commissioner. The attorney's position is described in greater detail by the Washington County Civil Service Commission:

*GENERAL STATEMENT OF DUTIES*: Acts as legal advisor and general consultant to the Department of Social Services; does related work as required.

*DISTINGUISHING FEATURES OF THE CLASS*: This is professional legal work involving responsibility for providing counsel to the County Department of Social Services. The work is performed under general direction of the Commissioner of Social Services in accordance with overall policies of the department with wide latitude for the exercise of independent judgment in applying legal knowledge to specific problems and taking of appropriate legal action. Supervision may be exercised over the work of subordinate employees.

Plaintiff's Exhibit # 6. In sum, plaintiff's responsibilities as attorney for the County Social Services Department were confined

to traditional legal representation. Accordingly, his contact with the Commissioner—the actual policy maker of the Department in association with the County Board of Supervisors—had in fact been limited to three meetings over the course of plaintiff's two year tenure.

As a result of the 1979 county elections, the political fate of the Democratic Board of Supervisors changed, and the security of plaintiff's employ changed with them. In the beginning of April, 1980, plaintiff was notified by Commissioner Costello of his intention to replace plaintiff with a Republican. Plaintiff's Exhibit A. While there is some disagreement among the parties as to whether plaintiff's term was to expire at about that time anyway, plaintiff states that the only reason he is being replaced is because of his political affiliation.

However, at trial plaintiff testified that his political affiliation has no bearing on his qualifications or ability to perform his job. This testimony was supported by three Department employees, Charles Ackley, Joann Ranney, and Joseph Caron, each of whom testified that political affiliation would have no bearing on someone's ability to be a competent attorney for the Social Services Department. This view signaled the only real point of contention at trial. The Commissioner argues otherwise. He testified that, as a Republican Commissioner, he would have a "better rapport" with a Republican as attorney for the Department. Transcript at p. 167. As a consequence, he felt that a political affiliation is a "basic criteria" for someone to be able to perform the job. Transcript at p. 174. The Commissioner was, nevertheless, hard pressed to point to any more specific examples of how political affiliation would enable an attorney for the Department to perform the job better. He did say that with Republican Board of Supervisors in office, he would be better able to work with them to solve problems if he had a fellow Republican as the attorney for the Department. Transcript at p. 165. As a final matter, it is not disputed that the plaintiff performed his job adequately. In fact, the Commissioner testified that he was not dismissing plaintiff because of his ability to perform his job competently. Transcript at p. 182.

■ It is now well settled that the First Amendment prohibits a public employee from being discharged because of an affiliation with a particular political party. *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The only exception to this rule is where the political affiliation is relevant to the effective discharge of the office. If a plaintiff should make a prima facie showing that a discharge grew out of constitutionally protected activities, the burden shifts to the defendant to prove by a preponderance of the evidence that the plaintiff would have been discharged for other reason(s) in any case. *See Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 416, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979).

■ At trial, Commissioner Costello did not really contest plaintiff's claim that he had been dismissed based on his political affiliation. Instead, the Commissioner attempted to explain his motivation as attributable to his desire to be more "comfortable" with his staff. The Commissioner's comfort, however, has no bearing on the legitimate qualifications of an attorney for the Department. In fact, the Commissioner as much conceded the point when he stated at trial that plaintiff was performing his job adequately. Moreover, although the Commissioner claims that a Republican Social Services attorney could work better with the Board of Supervisors, which presently is Republican, plaintiff's job does not require him to perform any duties that would concern the Board. Even the Commissioner admitted at trial that he had never asked plaintiff to attend a Board meeting. Transcript at p. 179. Furthermore, in comparing the job performance of a past Republican attorney for the Department, the Commissioner could not point to any category of job performance that the Republican attorney could perform better than a Democrat. Lastly, while some effort was made by defendants at trial to make it

seem that plaintiff would not be harmed by his dismissal because his term was about to expire in any event, this argument does little to aid their cause. The Supreme Court held in *Branti* that "the lack of a reasonable expectation of continued employment is not sufficient to justify a dismissal based solely on an employee's private political beliefs." 100 S.Ct. at 1291 n. 6, *citing Elrod v. Burns,* 427 U.S. 347, 360 n. 13, 96 S.Ct. 2673, 2683 n. 13, 49 L.Ed.2d 547 (1976).

In conclusion, the Courts finds that plaintiff Leo Layden was dismissed solely on the grounds of his political affiliation, and in violation of his Constitutional rights. It is therefore ORDERED that defendants, their agents and employees are hereby permanently enjoined from dismissing plaintiff solely on the grounds of his political beliefs, and it is further ORDERED that plaintiff within thirty days of the date of this Memorandum-Decision and Order, file written proof of compensatory damages, costs and attorney fees, and that defendants file a response to plaintiff's written submission within twenty days of receipt of same. Plaintiff's request for punitive damages is DENIED.