Marion Sciortino GOODWIN; Thomas F. Artessa, Sr.; Nicholas A. Jamsiuk; Francis H. Lazausky; Frank R. LaBella; John J. Puleo; and James J. Schiavetta, all individually and in behalf of themselves and all other employees of the City of Utica similarly situated, Plaintiffs,

v.

Louis LaPOLLA individually, and as Mayor of the City of Utica; Frank Dulan individually, and as special assistant to the Mayor of the City of Utica; Alfred Barbato individually, and as assistant to the Mayor of the City of Utica; the City of Utica; Thomas Nelson as Comptroller of said City; and John Doe and Richard Roe, the names John Doe and Richard Roe being fictitious, the true name of each said Defendant being unknown to the Plaintiffs, the Defendants intended as being advisors, consultants and/or members of committees advising and consulting the Mayor of the City of Utica concerning the discharge of employees of the City of Utica, Defendants.

No. 84–CV–253.

United States District Court,
N.D. New York.

June 19, 1984.

Onofrio J. Puleo, Utica, N.Y., for plaintiffs.

Armond J. Festine, Corporation Counsel, Utica, for defendants City of Utica.

### MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

#### I

On November 8, 1983 former Democratic City Councilor Louis LaPolla was elected Mayor of the City of Utica. Mr. LaPolla ran on the Republican ticket and defeated three-term incumbent Mayor Stephen Pawlinga. In the relatively short amount of time between the November general election and Mr. LaPolla's assumption of office on January 3, 1984, Mr. LaPolla and his top aides attempted to formulate a smooth transition period. This attempt was not altogether successful due to the bitter feelings between the City's political parties. During the month of December Mayor-elect LaPolla determined that a certain number of City employees would be laid off. Approximately 68–86 employees were then laid off on or about January 3, 1984.

Seven of the laid-off employees have brought this action seeking declaratory, injunctive and monetary relief pursuant to 42 U.S.C. § 1983 (1982). Specifically, plaintiffs allege that they were discharged solely because of their political beliefs in violation of the first amendment and the rules announced in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Although the Supreme Court's decision in *Branti* and *Elrod* have been the law in this country for a number of years, the Northern District of New York has been the setting for numerous lawsuits alleging a violation of these well-established principles. *See, e.g., Visser v. Magnarelli,* 530 F.Supp. 1165 (N.D. N.Y.1982); *Brady v. Paterson,* 515 F.Supp. 695 (N.D.N.Y.1981); *Layden v. Costello,* 517 F.Supp. 860 (N.D.N.Y.1981).

In the context of this particular action, the court believes that the bitter election campaign and loss by former Mayor Pawlinga may be one of the key factors giving

rise to this lawsuit. This is so notwithstanding the discharge of the seven named plaintiffs. In any event plaintiffs have alleged violations of their constitutional rights, and this court will not hesitate to address those issues.

While plaintiffs claim that they were aware of their impending discharges soon after the November general election, no action with respect to seeking an injunction was forthcoming until late in February of 1984. Thus, unlike the situations presented in *Visser, Brady* and *Layden,* this court was not able to enjoin defendants from discharging plaintiffs prior to their actual terminations. Be that as it may, this court has the power to order, by injunction, the reinstatement of plaintiffs even though such an order will not be entered until long after the discharges. *See generally Holt v. The Continental Group, Inc.,* 708 F.2d 87, 90 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1316, 79 L.Ed.2d 712 (1984) (citing *National Ass'n of Letter Carriers v. Sombrotto,* 449 F.2d 915, 921 (2d Cir. 1971); *Westchester Lodge 2186 v. Railway Express Agency,* 329 F.2d 748, 752 (2d Cir. 1964)).

This court entered an order to show cause on February 27, 1984 directing defendants to show cause why plaintiffs should not be reinstated and why this action should not be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. A hearing on plaintiff's motion for a preliminary injunction was held on March 1st and 2nd and was concluded on March 15th and 16th of 1984. Pursuant to Rule 65(a)(2) of the Fed.R. Civ.P., and with the consent of the parties, the court has consolidated the hearing on the motion for a preliminary injunction with the trial on the merits. The court has received post-trial memoranda from the parties and this Memorandum—Decision and Order shall be considered the court's findings of fact and conclusions of law. *See* Fed.R.Civ.P. 52.

## II

Louis LaPolla served as a Utica City Councilman for approximately ten years. During this time Mr. LaPolla was an enrolled and active member of the Democratic Party. Following several attempts to receive the Democratic nomination, Mr. La-Polla sought and received the Republican endorsement for Mayor in the spring of 1983. Mr. LaPolla, as noted above, defeated three-term incumbent Mayor Stephen Pawlinga in the general election held on November 8, 1983.

In order to effect a smooth transition into his new job, Mr. LaPolla formed a transition team consisting of, among others, the present Corporation Counsel Armond J. Festine and defendants Frank Dulan and Alfred Barbato. As is customary in any change of administration, the matter of terminating City employees and replacing them with new employees was a prime topic of discussion. While defendant Dulan suggested that a "clean sweep" of all present City employees would be the appropriate course of action, it is beyond dispute that Mr. LaPolla and the rest of his transition team rejected such a suggestion. Moreover, the record in the present case indicates that no "clean sweep" was made. Rather, only a small percentage of City employees were discharged by the incoming administration.

During the period between the general election and the first day of the new administration on January 3, 1984, several significant events occurred. While the timing of these events is much in dispute and may well be at the core of the instant lawsuit, the court believes that they should be described in the following order.

Mayor-elect LaPolla and City Comptroller Thomas Nelson, also a defendant herein, met during the month of December to discuss the City's budget. The budget for the City of Utica runs from April 1 through March 31. Mr. Nelson informed Mr. LaPolla that notwithstanding the fact that the current budget had some months to run, the City was heading for a possible $750,-000.00 deficit if the rate of spending was not reduced. In addition, Mayor-elect La-Polla met with Michael Houseknecht, the Commissioner of Urban and Economic Development. Mr. Houseknecht informed

Mayor-elect LaPolla that the City was under an order from the United States Department of Housing and Urban Development [HUD] to reimburse HUD approximately $176,000.00 for improper spending and/or accounting procedures by the City's Urban and Economic Development Administration.

The next occurrence during this time period was the review by Mr. LaPolla and his transition team of the City's payroll. Mayor-elect LaPolla and his aides examined the Utica City payroll and also requested all City employees interested in remaining on the payroll to submit their resumes to Mr. LaPolla for his review. Mayor LaPolla testified that his efforts were hampered by the failure of the outgoing administration to cooperate in any way with the transition team and Mr. LaPolla himself. Plaintiffs produced former Deputy Mayor Joseph LaBella to rebut Mayor LaPolla's assertion that there was a lack of cooperation. Mr. LaBella's demeanor in testifying, including his off-the-record comments after leaving the witness stand, buttress the court's conclusion that there was indeed bitterness between the City's political parties following Mr. LaPolla's victory in the general election. While this lack of cooperation may not have been as great as that testified to by Mr. LaPolla, the court finds that Mayor-elect LaPolla and his transition team were hampered in their efforts by the outgoing administration.

As a result of Mayor-elect LaPolla's conversations with Comptroller Nelson, Commissioner Houseknecht, and his review of the City's payroll, it was determined that a certain number of City employees would be terminated. The court is reluctant to place an exact figure on the number of employees proposed to be terminated, or actually terminated, because neither plaintiffs nor defendants established this fact with any degree of certainty at trial. Plaintiffs have been urging this court to accept their figure of 86 employees but failed to produce any evidence in support thereof, and this court declines plaintiffs' suggestion to make a line-by-line comparison of the two City payrolls admitted into evidence. *See* Plaintiffs' Exhibits 1 and 2. On the oppo-

site side defendants have urged the court to accept their figure of 68 employees. As noted previously, defendants also failed to establish the precise number of employees actually terminated. Thus, the court will assume that the figure is somewhere between 68 and 86 and will simply refer to such persons as the "terminated City employees."

Mayor-elect LaPolla sent notices to many, if not all, of the City employees to be terminated. Such notices were dated on or about December 23, 1983 and advised the employees that their services would no longer be required after January 3, 1984. On January 3, 1984, the first day of the new administration, the terminated City employees were personally handed notices stating that their services were being terminated immediately. Needless to say, this first day of business was a hectic time at Utica City Hall. The court further notes that plaintiffs dispute the timing of Mayor-elect LaPolla's sending of the notices vis-a-vis his discovery of the impending budget crisis. Plaintiffs assert that Mayor-elect LaPolla learned of the budgetary problems *after* he sent the notices. Defendants, of course, assert that Mayor-elect LaPolla learned of the budget deficit *before* sending the notices and that such knowledge was the main reason for the employee terminations. While the court is inclined to accept plaintiffs' version of this event, such a finding would not be dispositive of the question of whether plaintiffs were discharged in violation of their constitutional rights.

In order to comply with certain State Labor Department regulations and to facilitate the orderly separation of the terminated City employees, Comptroller Nelson informed Mayor LaPolla that he would be required to supply reasons for the employee terminations. Mayor LaPolla communicated this requirement to Corporation Counsel Festine, who then prepared a memorandum listing the employees who were being terminated and the reasons therefore. *See* Plaintiffs' Exhibit 3. Plaintiffs have made much of the memorandum and conclude that the reasons for discharge

enumerated therein establish that the employee terminations were politically motivated. Mr. Festine testified that he prepared the list at Mayor LaPolla's direction and the reasons for the various employee terminations were supplied solely to comply with Comptroller Nelson's demands. Thus, Mr. Festine stated that the reasons listed in the memorandum were really an afterthought and not truly reflective on the actual reasons for the terminations. The court accepts Mr. Festine's explanation of the memorandum and finds that the statement enumerated therein are not truly reflective of Mayor LaPolla's reasons for terminating the City employees.

The terminated City employees met with Comptroller Nelson shortly after January 3, 1984, and Mr. Nelson explained the procedures to be followed in completing the necessary paperwork for separation. Mr. Nelson also answered questions put to him by the former employees, but was unable to properly respond to inquiries regarding the specific reasons for their terminations. On this issue the court finds that Comptroller Nelson neither directed nor had any personal involvement in the decision to terminate any City employees. Such a decision rested entirely with Mayor LaPolla, who freely admitted the same during his testimony.

On February 22, 1984, nearly two months after the terminations, seven of the terminated City employees filed the instant action. These seven plaintiffs have brought this action purporting to represent a class of terminated City employees all alleging that they were discharged solely because of their political beliefs. Defendants have strenuously opposed class certification on the ground that common issues of law and fact are not present among all of the putative class members and that plaintiffs have generally failed to meet the requirements of Fed.R.Civ.P. 23(a).

### III

■ The law is clear that the first amendment prohibits a public employer from discharging an employee because of his or her affiliation with a particular political party. *Layden v. Costello*, 517 F.Supp.

at 862 (citing *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574; *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547). There is an exception to this rule, however, when the employee's political affiliation is relevant to the effective performance of his or her duties.

■ In order to make out a prima facie case of unlawful discharge, a plaintiff must show that his membership in a particular political party was a "substantial" or "motivating" factor in the public employer's decision to discharge him. *Visser v. Magnarelli*, 530 F.Supp. at 1169 (citing *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)); *see also Nekolny v. Painter*, 653 F.2d 1164, 1167–68 (7th Cir.1981); *Tanner v. McCall*, 625 F.2d 1183, 1192–95 (5th Cir.1980), *cert. denied*, 451 U.S. 907, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Gannon v. Daley*, 561 F.Supp. 1377, 1379 (N.D.Ill.1983); *Lewis v. Blackburn*, 555 F.Supp. 713, 722 (W.D.N.C. 1983). Once such a showing has been made, the burden then shifts to the defendant to prove by a preponderance of the evidence that the employee's political affiliation was not a "substantial" or "motivating" factor in the decision to discharge the employee. *Visser v. Magnarelli*, 530 F.Supp. at 1169. *See generally Mt. Health City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 287, 97 S.Ct. at 576 (defendant must show that it would have reached the same conclusion even in the absence of the constitutionally protected conduct).

■ With regard to plaintiff's motion for class certification, plaintiffs purport to represent a class comprised of persons employed by the City of Utica in its various departments, bureaus, programs, agencies and offices whose employment was terminated due to the private political beliefs, activities and association of such employees. Before certifying such a class, the court must be convinced that plaintiffs have met their burden of proving that the numerosity, commonality, typicality and adequacy of representation requirements of Fed.R.Civ.P. 23(a) have been satisfied.

**1430**

*See McCoy v. Ithaca Housing Auth.,* 559 F.Supp. 1351, 1354–55 (N.D.N.Y.1983) and cases cited therein.

■ As to plaintiffs' request for injunctive relief, the standard in this Circuit for the issuance of a preliminary injunction is that contained in *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70 (2d Cir.1979) (per curiam). Namely, plaintiffs must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Id.* at 72; *Sadowsky v. City of New York,* 732 F.2d 312, 316 (2d Cir.1984). With regard to the first prong of the *Jackson Dairy* test, the mere fact that a person has been discharged will not, absent a "genuinely extraordinary situation," furnish a basis for finding irreparable injury. *Rubino v. City of Mount Vernon,* 707 F.2d 53, 56 (2d Cir.1983) (quoting *Sampson v. Murray,* 415 U.S. 61, 92 n. 68, 94 S.Ct. 937 n. 68, 39 L.Ed.2d 166 (1974)). In the present case, however, plaintiffs have alleged that the actions of defendants in discharging them for political reasons have deprived them of their rights to freedom of expression and association in violation of the first amendment. In such a situation irreparable injury is presumed. *Elrod v. Burns,* 427 U.S. at 373, 96 S.Ct. at 2689. Accordingly, the court will concentrate on plaintiffs' likelihood of success on the merits.

In the present case plaintiffs have produced evidence to show that each of them campaigned for incumbent Mayor Stephen Pawlinga in the November 1983 general election. Such campaigning varied in terms of degree, but most of the named plaintiffs testified that they circulated petitions, made posters and generally aided in the campaign effort. Several of the named plaintiffs have asserted pendent state law claims alleging that as honorably discharged veterans who served in the armed forces during wartime they were entitled to special protection under New York's Civil Service Law. Due to the differences not only in terms of proof, but also in causes of action, the court will address each of the plaintiffs' claims separately. Following this determination the court will examine plaintiffs' motion for class certification. *See East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (holding that it is error to certify class when named class representatives are not members of the class they purport to represent).

### Marion Sciortino Goodwin

Plaintiff Marion Goodwin was last employed as a secretary in the Section 8 Rental Assistance Office. Ms. Goodwin worked for James Poupart, Jr., who was the administrator of that program. At trial Ms. Goodwin testified on her own behalf and stated that she had never received complaints about the quality of her work. Plaintiff further testified that she had received compliments from Mr. Poupart about her work and was not afforded an explanation for her termination. Plaintiff stated that she was active in Democratic politics.

In response, defendants offered the testimony of Mr. Poupart, Michael Houseknecht, the Commissioner of Urban and Economic Development for the City, and Carmelita LaRocco, Ms. Goodwin's replacement. Mr. Poupart testified that Ms. Goodwin's secretarial abilities were somewhat deficient, that she made excessive personal telephone calls during business hours, and that she often conducted personal business and sales activities during business hours. Mr. Poupart also testified that he had complained to his supervisor, Michael Houseknecht, about plaintiff's abilities. Mr. Houseknecht testified that he had received complaints about plaintiff's performance and that he did not recommend to Mayor LaPolla that plaintiff be retained. Lastly, Carmelita LaRocco, plaintiff's replacement, testified that she was a registered Democrat and that she had submitted a resume to Mayor LaPolla after the election. Plaintiff Goodwin was not asked whether she had submitted a resume to Mayor LaPolla.

■ Considering all of the above, the court finds that plaintiff Goodwin has failed to show that her membership in the Democratic party was a "substantial" or "motivating" factor in the City's decision to discharge her. Although plaintiff was indeed a registered Democrat, she was replaced by Carmelita LaRocco, who was also a registered Democrat. Moreover, even if plaintiff can be said to have made out her prima facie case of unlawful discharge, a fact not conceded by this court, defendants came forward with more than a preponderance of evidence to suggest that plaintiff was discharged due to poor work performance. The court fails to see how the present evidence proves that plaintiff's constitutional rights were violated by the decision to terminate her services. Accordingly, the court hereby dismisses plaintiff Marion Goodwin's complaint.

*Thomas F. Artessa, Sr.*

Plaintiff Artessa was last employed as the office manager for the Bureau of Senior Services in the City of Utica. Mr. Artessa testified that he administered various programs designed to benefit senior citizens in the Utica area and that he never received any complaints about his job performance. Mr. Artessa also testified that he was a registered Democrat who campaigned for incumbent Mayor Stephen Pawlinga. Plaintiff Artessa also offered the testimony of Susan R. Baum, the former Director of the Bureau of Senior Services of the City of Utica, who stated that plaintiff's work performance was in all respects satisfactory and that he possessed a good rapport with the senior citizens who utilized the Bureau's services.

Defendants offered the testimony of plaintiff's replacement, Rhonda Cohen, who was also a registered Democrat. Ms. Cohen, unlike plaintiff Artessa, has received advanced educational training in the field of gerontology and currently possesses a state certification in the field. Ms. Cohen received a Masters Degree from Syracuse University in 1983 and completed her Masters thesis in the study of problems in aging. Mr. Artessa is a high school graduate who has completed a "few courses" at Mohawk Valley Community College and possesses no formal training in services to the elderly.

At trial Ms. Cohen testified that her current position encompassed more responsibility than did Mr. Artessa's former job as office manager. In addition, Ms. Cohen testified that she is earning less than did Mr. Artessa and that the staff was reduced from 12 employees to 10 employees. Lastly, Ms. Cohen explained that following completion of her education she submitted a resume to Mayor LaPolla. While plaintiff Artessa was not asked whether he submitted a resume to Mayor LaPolla, Ms. Cohen testified that plaintiff stated to her on or about January 3, 1984 that he would not work for the LaPolla administration.

■ Defendants also offered the testimony of Salvatore Sgroi, a driver and employee of the Bureau of Senior Services. While Mr. Sgroi purported to offer testimony concerning plaintiff Artessa's lack of attendance at his job, the court finds such testimony to be wholly unpersuasive considering Mr. Sgroi's lack of personal knowledge about the events in question. Accordingly, plaintiffs' motion to strike Mr. Sgroi's entire testimony is granted.

In rebuttal plaintiffs offered the testimony of Mary Laino, a former dispatcher at the Bureau of Senior Services, and Merrion Holland, the Director of the Corn Hill Senior Center in Utica. Ms. Laino testified to a purported conversation between plaintiff Artessa and Ms. Cohen on January 3, 1984, and Ms. Holland testified to her relationship with Mr. Artessa over his years of service.

■ After reviewing all of the evidence relative to plaintiff Thomas Artessa, the court finds that plaintiff has failed to demonstrate that his discharge was in any way connected to his political affiliation. Mr. Artessa was discharged and replaced by another member of the Democratic party. Mr. Artessa's replacement was eminently more qualified than he was and was also hired at a lesser salary. Notwithstanding the above, the court finds that defendants

came forward with substantial evidence to prove that Mr. Artessa's political affiliation was not a factor in his discharge. Accordingly, the court hereby dismisses plaintiff Thomas Artessa's complaint.

### Nicholas A. Jamsiuk

■ Plaintiff Nicholas Jamsiuk was last employed as a Design Coordinator in the Department of Urban and Economic Development. Mr. Jamsiuk testified that he was a registered Democrat who actively campaigned for incumbent Mayor Stephen Pawlinga. In addition, Mr. Jamsiuk noted that his supervisor was Angelo DePaul. Unfortunately, plaintiff offered no other evidence to suggest that his termination was politically motivated. No testimony was received suggesting that any threats or statements were made by any of the defendants to Mr. Jamsiuk. Rather, the evidence shows that plaintiff was discharged from a City department that had budgetary problems and that his position has not been filled. Thus, the court finds that plaintiff Jamsiuk has failed to make out a prima facie case of unlawful discharge and that defendants have come forward with genuine nonpolitical reasons for the termination. Accordingly, the court hereby dismisses plaintiff Nicholas Jamsiuk's complaint.

### Francis H. Lazausky

Plaintiff Francis H. Lazausky was last employed by the City of Utica as a statistician in the Department of Urban and Economic Development. As with the testimony and evidence concerning Nicholas Jamsiuk, plaintiff Lazausky offered no evidence to suggest that his termination was in any way politically motivated. Plaintiff tetified that he is a registered Democrat and that he actively campaigned for incumbent Mayor Stephen Pawlinga. Plaintiff further testified that he was an honorably discharged veteran of the United States Army having served during the time of armed conflict.

■ Defendants have amply demonstrated that Mr. Lazausky was terminated for legitimate nonpolitical reasons. The Department of Urban and Economic Development was undergoing budgetary problems and many employees were terminated. Plaintiff Lazausky did not submit a resume to Mayor LaPolla following the election and has not shown any threats or animus on the part of City officials that could in any way lead to the conclusion that politics was a "substantial" or "motivating" factor in his discharge. Accordingly, the court hereby dismisses that part of plaintiff Francis Lazausky's complaint that alleges a violation of his constitutional rights. Plaintiff's pendent state claims will be dealt with separately.

### Frank R. LaBella

Plaintiff Frank R. LaBella was last employed by the City of Utica as a Specification Writer and Roofing Inspector for the City's rehabilitation program. This program fell under the jurisdiction of the Urban and Economic Development Department. Mr. LaBella testified to his long experience as a roofing inspector and his journeyman status in that profession. Plaintiff LaBella testified to the fact that he had been laid off on two prior occasions due to budgetary considerations. Plaintiff further testified that he was a registered Democrat who campaigned for incumbent Mayor Stephen Paulinga and that he had received no complaints about his work performance. Lastly, plaintiff testified that he was an honorably discharged veteran of the United States Army having served during the time of armed conflict.

Plaintiff offered no evidence of political reasons for his discharge save the highly speculative and unpersuasive testimony of Vincent Marrone. Mr. Marrone is a former employee of the City of Utica who was offered to recount an alleged conversation at a Christmas party. The court finds such testimony probative of nothing and accordingly has disregarded it entirely.

In response to plaintiff LaBella's assertions of unlawful discharge, defendants offered the testimony of Angelo DePaul, plaintiff's former supervisor. Mr. DePaul testified that an employee named Patrick Morano who had been trained by plaintiff

LaBella was currently performing the work of both himself and Mr. LaBella. Although Mr. Morano lacks the experience of Mr. LaBella, the court finds it interesting to note that Mr. Morano is a hiree of the former Pawlinga administration and is performing the work of two men at a salary below that previously earned by plaintiff LaBella.

After reviewing all of the above testimony, the court concludes that plaintiff LaBella has failed to meet his burden of demonstrating that his termination was in any way connected with his political affiliation. In addition, defendants have come forward with legitimate, neutral reasons for the discharge. Plaintiff's position was eliminated from a department that was having budgetary problems, and he was replaced by an employee hired by the previous administration to do not only plaintiff's but also his own job, all at a lesser salary. Accordingly, the court hereby dismisses that part of plaintiff Frank LaBella's complaint that alleges a violation of his constitutional rights. Plaintiff's pendent state claims will be dealt with in a succeeding section of this decision.

### John J. Puleo

Plaintiff John J. Puleo, the father of plaintiffs' counsel, Onofrio J. Puleo, is a former voting machine technician for the City of Utica. Mr. Puleo testified that he worked as the City's voting machine "expert" and generally kept inventory, made repairs and helped to distribute the machines at election time. Plaintiff testified that he was and always has been very active in Democratic politics and that he actively campaigned for incumbent Mayor Stephen Pawlinga. Mr. Puleo also testified that he was an honorably discharged veteran of the United States Army having served during the time of armed conflict.

In response defendants offered the testimony of Janet Havel, the Oneida County Republican Election Commissioner, and Gerald Tracy, plaintiff Puleo's replacement. Ms. Havel testified that plaintiff was not qualified to repair voting machines because he had not completed any approved courses such as the one offered at Jamestown, New York. While Ms. Havel had no complaints about Mr. Puleo's work performance, she questioned whether Mr. Puleo had ever actually repaired any machines. Ms. Havel stated that, to the best of her knowledge, Mr. Puleo did not service the machines because such servicing was done by Mr. Tracy and another gentleman who were both employed by the City as custodians. Mr. Tracy testified that he was now performing Mr. Puleo's job and that he was a graduate of the Jamestown Voting Machine School. The testimony generally revealed that the position of voting machine technician did not require full-time attendance and that Mr. Puleo rarely worked more than half a day.

Considering all of the above testimony, the court finds that plaintiff Puleo has failed to prove his prima facie case of unlawful discharge. While plaintiff's replacement was a Republican, the evidence fails to show that politics was a "substantial" or "motivating" factor in the termination. Plaintiff was not qualified for the position he held and was not performing the duties to which he was assigned. Notwithstanding the above, the court finds that defendants have clearly demonstrated that plaintiff was replaced by an individual with superior qualifications. Accordingly, the court hereby dismisses that part of plaintiff John J. Puleo's complaint that alleges a violation of his constitutional rights. Plaintiff's pendent state claims will be dealt with separately.

### James J. Schiavetta

Plaintiff James J. Schiavetta is a former carpentry inspector for the City of Utica. Mr. Schiavetta testified that he performed his job satisfactorily and that he never received any complaints about his work. Plaintiff further testified that he was an honorably discharged veteran of the United States Army having served during the time of armed conflict.

At trial plaintiff Schiavetta testified that he was actively involved in the campaign for incumbent Mayor Stephen Pawlinga and that this fact was known to all of the

defendants because of a newspaper article in a local paper. Specifically, the article in question revealed the fact that plaintiff had contributed $100.00 to the Pawlinga campaign. In this regard plaintiff testified that he had a conversation with then Mayor-elect LaPolla on the third floor of City Hall on or about November 16th of 1983. The Mayor-elect allegedly stated to plaintiff Schiavetta that he was surprised to learn that Schiavetta was a City employee. LaPolla is further alleged to have stated that he was aware that Schiavetta had made the $100.00 contribution, having read the same in the newspaper. While Mayor LaPolla testified that he remembered having a conversation with plaintiff in January of 1984 or possibly December of 1983, he denied mentioning the $100.00 contribution.

As to the reasons for plaintiff's termination, plaintiff testified that he did not know why he had been terminated, but generally believed that it was politically motivated. Mayor LaPolla testified that plaintiff's political affiliation was not at issue in the termination and that plaintiff's replacement, Dominick Rose, was also a member of the Democratic party. Mr. Rose did not begin work, Mayor LaPolla related, until mid-February, or some six weeks after plaintiff Schiavetta was terminated on January 3, 1984. Mayor LaPolla also testified that Mr. Rose was hired at a lesser salary than that previously paid to Mr. Schiavetta.

Considering all of the above testimony along with the demeanor of the witnesses at trial, the court finds that plaintiff has met his burden of proving a prima facie case of unlawful termination. In this court's view politics was the sole reason for plaintiff's termination. Mayor LaPolla did not know that plaintiff was a City employee and, therefore, could not have discharged him for any work-related reasons such as incompetence.

On the issue of credibility the court finds that plaintiff's version of the conversation with Mayor LaPolla is accurate and that the Mayor made a point of informing plaintiff about his (the Mayor's) knowledge of the $100.00 contribution. As such, the court believes that plaintiff's contribution was the sole reason for Mayor LaPolla's

action. Plaintiff's position as a carpentry inspector was not a politically sensitive position within the meaning of *Branti v. Finkel* and *Elrod v. Burns.* Indeed, plaintiff's former job was not filled for approximately six weeks after plaintiff was terminated.

Although defendants attempted to rebut this showing, the court finds that such an attempt falls quite short of that required under the appropriate case law. Defendants must show that politics was not a factor in the discharge and that they would have made the same decision even in the absence of the constitutionally protected conduct. *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. at 287, 97 S.Ct. at 576. Here, the overwhelming evidence before the court indicates that Mayor LaPolla terminated plaintiff as punishment for his contribution to the Pawlinga campaign.

 While the court acknowledges that Mr. Rose was hired at a lesser salary and is also a Democrat, the court rejects defendants' suggestion that Mr. Rose is a more qualified replacement. Defendants did not prove this fact by a fair preponderance of the evidence, and the court believes that such a suggestion is a mere pretext. Plaintiff's position was obviously a necessary one because defendants found it in their best interest to hire a replacement. Thus, unlike the case of plaintiff Frank R. LaBella, budgetary considerations could not have been the prime factor in terminating plaintiff. The court also finds it interesting to note that in the case of plaintiff Schiavetta, defendants did not offer him the opportunity to take a cut in pay rather than lose his job. This fact, coupled with the other evidence proving the unlawful motives of the defendants in terminating plaintiff leads the court to conclude that defendants have failed to rebut plaintiff's prima facie case.

 This brings the court to the question of a remedy. Clearly, this court has the power to order plaintiff reinstated even though this action was brought after the unlawful termination and after the commencement of the new City budget.

*Holt v. The Continental Group,* 708 F.2d at 90; *National Ass'n of Letter Carriers v. Sombretto,* 449 F.2d at 921; *Westchester Lodge 2186 v. Railway Express Agency,* 329 F.2d at 752. Considering the prayer for relief in the instant case and the minimal disruption that will result from the reinstatement of a single employee, the court finds that plaintiff James J. Schiavetta should be reinstated to his former position as a carpentry inspector at the same salary he was receiving on the date of his termination. Such reinstatement should, of course, be with retroactive salary and benefits and without any loss in seniority.

To the extent plaintiff has suffered any additional damages, the court hereby defers consideration of such damages until a later date when the issues can be properly briefed and argued. In view of this court's decision with respect to plaintiff Schiavetta's constitutional claim, the court believes that the pendent state claim under the New York State Civil Service Law may well be moot. Nevertheless, this claim will be dealt with in a succeeding section of this decision.

## IV

■ As noted above, in order for a class action to be certified under Rule 23 of the Federal Rules of Civil Procedure, the court must be satisfied that the requirements of Rule 23 have been met. *McCoy v. Ithaca Housing Auth.,* 559 F.Supp. at 1345–55. Moreover, the court must carefully scrutinize the proof on this issue as class action status should not be granted as a matter of routine. *See generally General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Here, the court agrees with defendants that plaintiffs have failed to meet the requirements of Rule 23(a) of the Fed. R.Civ.P.

On the issue of numerosity the court has still not been provided with an accurate figure for the number of Utica City employees terminated on January 3, 1984. For the sake of argument, however, the court will assume the figure to be between 68 and 86 employees. While such a figure might qualify as being too numerous for joinder to be practicable, plaintiffs have not shown why all class members could not have joined as plaintiffs in the instant lawsuit.

As to the issues of commonality and typicality, the discussion of the claims of the named class representatives makes it quite evident that plaintiffs have not met these requirements. It cannot be said that the claims of the named representatives are either common or typical to those of the unnamed members of the class.

■ Lastly, as to the issue of adequacy of representation, plaintiffs have not shown an absence of potential conflicts of interest between the class members, nor have they shown that their counsel is capable of representing the interests of the class. Accordingly, plaintiffs' motion for class certification is hereby denied.

## V

Plaintiffs Francis H. Lazausky, Frank R. LaBella, John J. Puleo and James J. Schiavetta have all asserted pendent state claims under New York State's Civil Service Law. *See* N.Y.Civ.Serv.Law § 75 (McKinney 1983) (proscribing discharge of honorably discharged veterans in absence of incompetence or misconduct shown after a hearing upon stated charges). In the present case it is undisputed that plaintiffs never received their hearings pursuant to state law. Indeed, Mayor LaPolla testified at trial that he was unaware of the provisions of the Civil Service Law as they relate to termination of veterans.

In their post-trial memorandum defendants assert that this court should decline to exercise pendent jurisdiction over these claims. Defendants assert that the federal and state claims do not derive from a "common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The court disagrees on this issue but does find that plaintiff's proof is lacking on these claims. The federal claims require proof that political affiliation was a "substantial" or "motivating" factor in the decision to terminate an em-

ployee. To the contrary, the state law claims require proof concerning the lack of a statutorily mandated hearing and then proof of an employee's incompetence or misconduct. While Mayor LaPolla indicated that no employee was afforded the requisite hearing, there was no proof adduced at trial concerning whether any of these employees met the criteria established in the Civil Service Law for termination. In addition, plaintiffs have completely failed to address this issue in their post-trial memorandum.

In *Gibbs* the Supreme Court discussed the various factors that courts should utilize in determining whether to accept pendent jurisdiction over state law claims. While this question is most often resolved at the pleadings stage, the Court recognized that this issue remains open throughout the litigation. 383 U.S. at 727, 86 S.Ct. at 1139. As such, the Court held that it would be appropriate to take into account the circumstances of already completed litigation when making the jurisdictional determination. *Id.*

■ In the present case the court has completed the hearing on the motion for a preliminary injunction converted into the trial on the merits. The proof at the hearing focused solely on the constitutional claims, and the only mention of the state law claims came when Mayor LaPolla was asked by the court whether he was familiar with the provisions of the New York State Civil Service Law. Under these circumstances the court believes that the exercise of pendent jurisdiction is not warranted. Accordingly, plaintiffs' pendent state law claims are hereby dismissed without prejudice. Plaintiffs are free to pursue those claims in state court and may renew such claims in this court in the event that any problems concerning the statute of limitations arise in state court.

## VI

■ In order for civil liability to attach in an action brought under 42 U.S.C. § 1983, it must be shown that the defendant in question was personally involved or in some way personally responsible for the alleged unlawful conduct. *McKinnon v.*

*Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Duchesne v. Sugarman,* 566 F.2d 817, 830 (2d Cir.1977); *Howard v. Koch,* 575 F.Supp. 1299, 1303 (E.D. N.Y.1982). Here, the evidence demonstrates beyond contention that Mayor Louis LaPolla was the only defendant who in any way participated in the decision to discharge the named plaintiffs herein. Mr. LaPolla testified to this fact during the course of this trial.

■ Inasmuch as plaintiffs have failed to establish any official policy or custom of the City of Utica that is causally related to their discharges, *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983), and because the theory of respondeat superior does not apply to causes of action founded upon 42 U.S.C. § 1983, *Monell v. Department of Social Servs. of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), plaintiffs' claim against the City of Utica must be dismissed. Accordingly, the court hereby dismisses the complaint against all defendants save for Mayor Louis LaPolla.

## VII

In sum, the court hereby dismisses the constitutional claims of plaintiffs Goodwin, Artessa, Jamsiuk, Lazausky, LaBella and Puleo. These plaintiffs have failed to prove by a fair preponderance of the evidence that their terminations were in any way connected with their political affiliations. The court further dismisses the pendent state law claims without prejudice; plaintiffs may renew such claims in this court should procedural problems arise in state court. Plaintiffs' motion for class certification is hereby denied as plaintiffs have failed to satisfy the requirements of Fed.R.Civ.P. 23.

With regard to plaintiff Schiavetta the court finds that this plaintiff was unlawfully discharged from his position as a carpentry inspector and must be reinstated forthwith. Plaintiff is to be reinstated with no loss in seniority, benefits or pay and is entitled to an award of back pay to compensate him for his unlawful discharge. Such

an award of back pay may, of course, be offset by any sums earned or realized by plaintiff in the period between the date of his discharge and the date of this decision. Plaintiff may present any additional claim of damages to this court in writing within ten (10) days of the date of this decision. Thereafter, defendants have twenty (20) days to respond to such claims in writing.

Lastly, this action is hereby dismissed with prejudice as to defendants Dulan, Barbato, the City of Utica, Nelson, Doe and Roe. Plaintiffs have failed to establish any personal involvement on the part of these defendants sufficient to warrant the imposition of civil liability. This court shall retain jurisdiction over this matter to ensure compliance with the terms of this decision and to protect the rights, if any, of those plaintiffs asserting pendent state law claims.

It is so Ordered.